FILED

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## ALEXANDRIA DIVISION

2022 DEC 13  P 2: 17

ANDREW A. AQUILA,

    *Plaintiff,*

           *v.*

SREIT BROAD VISTA TERRACE LLC,

    *Defendant.*

Case No.

1:22CV1421

JURY TRIAL DEMANDED

## COMPLAINT

### I.    NATURE OF THE ACTION

1. This is a civil action alleging violations of the Fair Housing Act, the Civil Rights Act of 1866, and Title VI of the Civil Rights Act of 1964. It also alleges insurance fraud, unjust enrichment, breach of contract, negligence, abuse of process, and intentional infliction of emotional distress.

### II.    PROCEDURAL HISTORY

2. Abusing process, Defendant filed two retaliatory unlawful detainer actions, Case No. GV22006593-00 and Case No. GV22010033-00, in the Loudoun County General District Court, which is a court not of record. Va. Code §§ 8.01-126; 16.1-69.5(a) and (b).

3. Both cases arise from the same cause of action.

4. Defendant filed two motions before the Loudoun County General District Court to nonsuit said unlawful detainer actions.

5. The first nonsuit motion, submitted as a matter of right, was granted on May 25, 2022. Va. Code § 8.01-380(B).

6. When submitting a second nonsuit motion, counsel for Defendant did not inform the Loudoun County General District Court of the first nonsuit. "When suffering a nonsuit, a

1

party shall inform the court if the cause of action has been previously nonsuited." Va. Code § 8.01-380(B).

7. The second nonsuit motion, which was submitted to the Loudoun County General District Court, was also granted on December 9, 2022.

8. Plaintiff did not consent to the second nonsuit motion because he brought counterclaims against Defendant. Va. Code § 8.01-380(D).

9. The Loudoun County General District Court did not allow Plaintiff's counterclaims to remain pending for independent adjudication. Va. Code § 8.01-380(D).

10. The Loudoun County General District Court did not issue a final judgment adjudicating Plaintiff's counterclaims on the merits.

### III.    PARTIES

11. Plaintiff Andrew Aquila is an individual who is currently residing at 19800 Cornerstone Square, Ashburn, Virginia.

12. Plaintiff has been residing at this place since February 25, 2019.

13. Defendant Streit Broad Vista Terrace LLC is a corporation doing business in the Commonwealth of Virginia.

14. Its known business place is located 19900 Broad Vista Terrace, Ashburn, Virginia

15. Defendant Streit Broad Vista Terrace LLC is Plaintiff's landlord.

16. Upon information and belief, Defendant owns Acadia Apartments, the apartment complex where Plaintiff has been residing since February 25, 2019. The premises, i.e., Apartment No. 304, located at 19800 Cornerstone Square, Ashburn, Virginia, are subject of this controversy.

### IV.    JURISDICTION

17. This Court has original jurisdiction over the present controversy pursuant to 28 U.S.C. §1331.

18. Pursuant to 28 U.S.C. §1332, this Court has original jurisdiction because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

19. Pursuant to 28 U.S.C. §1343, this Court has original jurisdiction because Plaintiff has suffered deprivations caused by the unlawful acts of Defendants. These unlawful acts have deprived Plaintiff of rights secured by Acts of Congress which provide for equal rights of citizens or of all persons within the jurisdiction of the United States.

20. As stated above, the nonsuited unlawful detainer actions, Case Nos. GV22006593-00 and GV22010033-00, have become nullities. Therefore, they are not being removed to this Court. However, pursuant to 28 U.S.C § 1441(f), this Court may still exercise derivative jurisdiction and is not precluded from hearing and determining any claim in the present controversy upon which the Loudoun County General District Court did not have jurisdiction.

21. Pursuant to 28 U.S.C. §§ 1367, this Court has supplemental jurisdiction over State and common law claims brought in this civil action.

### V.    VENUE

22. Pursuant to 28 U.S.C. §§ 1391 , venue is proper because both Plaintiff and Defendant are domiciled in the Eastern District of Virginia. Venue is also proper because the events or omissions giving rise to the claims herein articulated occurred and the property that is the subject of the action is situated in this District

### VI.    FACTS

23. On or about May 11, 2022, Defendant refused payment of rent made by Plaintiff through federal emergency rental assistance to which he was eligible and qualified through the Virginia Rent Relief Program (RRP).

24. RRP is a federal emergency rental assistance program that has been managed by the Virginia Department of Housing and Community Development (DHCD). This emergency rental assistance program was enacted by the United States Congress pursuant to the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Public Law 116-136) and the American Rescue Plan Act of 2021 (ARPA) (Public Law 117-2).

25. Upon information and belief, Virginia has exhausted all funding available for rental assistance through RRP on October 14, 2022.

26. Defendant refused to cooperate with DHCD and submit an application on Plaintiff's behalf for emergency rental assistance that would have covered the allegedly unpaid rent it was claiming.

27. In lieu of cooperating with DHCD, as requested by Plaintiff, Defendant's Leasing Manager, Andrea Parades, refused to submit documents in support of Plaintiff's RRP renewal application.

28. As evidenced by an email exchange dated May 11, 2022, between Ms. Parades and Plaintiff, Ms. Parades threatened "further legal action" against Defendant.

3

29. As evidenced by her email to Plaintiff, Ms. Parades threatened legal action while Defendant was already benefitting from and receiving, on the very same day, federal assistance through DHCD.

30. Prior to this threat of legal action, Plaintiff informed Defendant that he was eligible and qualified for additional emergency assistance and, therefore, he timely submitted an RRP renewal application. As shown by the email exchange, this information was communicated to Ms. Parades on May 11, 2022. This email exchange indicates that Plaintiff provided Ms. Parades with a reference as to his RRP renewal application No. 2286702-2.

31. Despite Plaintiff's multiple requests, Defendant refused, after May 11, 2022, to submit to DHCD its Taxpayer Identification Number and Certification (Form W-9) and other records, in support Plaintiff's RRP renewal application No. 2286702-2.

32. As unambiguously asserted in an email exchange with Plaintiff, on or about September 13, 2022, counsel for Defendant willfully misrepresents that his client is not legally required to cooperate with and submit records in support of Plaintiff's RRP application (or other tenants' applications, for that matter ) to DHCD so that Defendant may receive payment of rent.

33. Counsel's electronic communication states that his client is not required to exercise due diligence. In addition, this communication clearly asserts that Defendant has the right to use the legal process.

34. Defendant has not exercised diligence or shown any good faith in resolving this instant housing dispute prior to using the legal process.

35. By initiating the above-referenced unlawful detainer actions, Defendant abused the legal process. Nonsuiting them is further abuse of process.

36. On October 6, 2022, Defendant filed the second unlawful detainer action to retaliate against Plaintiff because the latter complained to DHCD regarding Defendant's refusal to cooperate.

37. An email exchange between Plaintiff and Defendant's Community Director, Ms. Kathleen Grey, indicates that the latter has been aware of Plaintiff's complaints to DHDC regarding Defendant's refusal to cooperate. This exchange of emails took place on October 12, 2022.

38. Although the second unlawful detainer action was already filed on October 6, 2022 and, hence, Ms. Grey was represented by counsel, she nonetheless contacted Plaintiff and admitted, as evidenced by her October 12, 2022 email, that Defendant had not cooperated with DHCD.

39. Plaintiff met in person with Defendant's Community Director and her staff, including Ms. Andrea Parades and Phaimy Bassette, Assistant Community Director, on many occasions to discuss emergency assistance applications.

4

40. Since February 25, 2019, Plaintiff's move-in date, Ms. Grey and her staff have been aware of or have perceived Plaintiff as a non-Caucasian, non-White, and/or Brown person.

41. Since February 25, 2019, Ms. Grey and her staff have been aware of Plaintiff's age.

42. On November 15, 2022, William LeGrand Northcutt, the DHCD's records custodian released and certified the authenticity of documents requested by Plaintiff pursuant FOIA/PA request. **These authentic documents constitute admissible evidence.**

43. Mr. Northcutt's list of documents does not show that Defendant cooperated with DHCD and submitted any documents related to Plaintiff's RRP application No. 2286702-2.

44. However, Mr. Northcutt's list of documents show that Defendant cooperated with DHCD and submitted to this agency documents in support Plaintiff's RRP application No. 2286702.

45. As shown by DHCD's landlord application No.165499 activity log, Defendant submitted its application on January 27, 2022.

46. This was following Plaintiff's submission of his RRP application No. 2286702 on January 25, 2022. This application was accepted and approved by DHCD and payment of rent was made to Defendant on May 7, 2022.

47. As stated above, on May 11, 2022, Plaintiff duly and timely submitted a new application to be considered again for RRP.

48. The deadline for both new and renewal applications was Sunday, May 15, 2022, at 11:59 pm.

49. Because it was timely filed, Plaintiff's timely RRP renewal application was accepted on June 17, 2022.

50. Despite being informed of Plaintiff's pending RRP renewal application, Defendant refused to submit documents required by DHCD to process and timely approve Defendant's application.

51. Plaintiff was informed by DHCD that Defendant refused to cooperate and submit the documents needed to process his RRP application.

52. Plaintiff communicated this information to Ms. Grey. She refused to efficiently and timely act upon it and remedy the situation.

53. On July 7, 2022, while Plaintiff's RRP application was pending, Ms. Grey signed and issued to Defendant a Notice of Material Noncompliance of Rent – 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises.

54. On the same day, Plaintiff was notified by Ms. Parades that Defendant would not submit on behalf of tenants any documents pertaining to RRP.

55. On September 13, 2022, Defendant's counsel sent an email to Plaintiff informing him of the same.

56. Since February 25, 2022, Plaintiff has been subjected to false fire alarms on Defendant's premises.

57. On numerous occasions, those false alarms were set off late at night when Plaintiff was asleep.

58. Those false alarms were also set off during the wee hours, thus forcing Plaintiff and other tenants to rush out, sometimes under the rain.

59. On one occasion, those alarms were set off several times within a period of 24 hours.

60. On all occasions, no fire was ever detected.

61. These noxious nuisances were reported by Plaintiff and other tenants to the Ashburn Volunteer Fire and Rescue Department (AVFRD).

62. AVFRD has kept accurate records of those reports. Plaintiff submitted an FOIA/PA request to AVFRD for disclosure. Plaintiff is awaiting AVFRD's response.

63. Defendant did not fix this issue of false fire alarms until September 2022.

64. Despite the fact that Plaintiff and his property, as required by Virginia law, have been covered by an insurance policy since February 25, 2019, Defendant has been charging Plaintiff a monthly premium of $20.00.

65. On February 25, 2019, Plaintiff submitted to Defendant proof of insurance.

66. Plaintiff requested that Defendant opt him out of Defendant's insurance. Defendant, however, has been misrepresenting to Plaintiff that Defendant is required to be covered by Defendant's "master insurance."

## VII.   CLAIMS

### COUNT I
### Intentional Discrimination
### Source of Funds
### Violation of Va. Code § 36-96.3

67. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

68. Defendant refused to cooperate with DHDC and submit documents on behalf of Plaintiff so that rent payment be made.

69. By refusing to cooperate with DHCD, Defendant made it clear that it refuses funds originating from a federal emergency rental assistance program, i.e., RRP.

70. By rejecting funds originating from RRP, Plaintiff made its intention clear that it did not want assisted tenants on its premises.

71. Defendant intentionally discriminated against Plaintiff because the source of funds covering rent is federal assistance.

72. Defendant intentionally discriminated against Plaintiff because it views him as an assisted tenant.

### COUNT II
### Intentional Discrimination
### Elderliness
### Violation of Va. Code § 36-96.3

73. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

74. At all times relevant to this controversy, Plaintiff was over 55 years old.

75. Defendant had knowledge that Plaintiff was over 55 years of age.

76. Defendant was aware that Defendant belongs to a vulnerable class of tenants.

77. Defendant refused to exercise due diligence in order for Plaintiff to benefit from an emergency rental assistance program, i.e., RRP.

78. Defendant, without justification, refused to supply documentation in support of Plaintiff's RRP application No. 2286702-2.

79. Defendant afforded tenants under the age of 55 the possibility to benefit from RRP and have their rents and fees paid through his program.

7

80. Between January 2022 and May 2022, Defendant supplied DHCD with documentation supporting younger (under 55) tenants' RRP initial or renewal applications.

81. By doing so, Defendant intentionally discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling.

## COUNT III
### Retaliatory Conduct
### Virginia Residential Landlord and Tenant Act
### Violation of Va. Code § 55.1-1258

82. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

83. Plaintiff complained to DHCD because of Defendant's refusal to cooperate and accept additional assistance funds that cover Plaintiff's rent.

84. Plaintiff complained to DHCD because Defendant's unlawful acts are discriminatory.

85. Complaining to DHCD about being deprived by Defendant from participating and enjoying the benefits of a federal program is a protected activity that is guaranteed by the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

86. As evidenced by emails from Defendant and its counsel, Defendant was aware that Plaintiff was engaging in a protected activity.

87. Defendant was aware that rent arrears, which it has heretofore claimed, could have been paid through RRP.

88. However, Defendant refused payment and, rather, initiated unlawful detainer actions.

89. Considering Defendant's bad faith and its failure to exercise due diligence as to the collection of allegedly owed rent arrears, Defendant's State actions do not have any other purpose but to maliciously evict Plaintiff. They constitute an adverse decision or course of action that could have been avoided.

90. Therefore, a causal connection exists between Plaintiff's protected activity and Defendant's adverse action.

91. Defendant's unlawful detainer actions and the ensuing nonsuit motions constitute an abusive and malicious course of action. They are not justified by acceptable business practices. Their motive is clearly retaliatory animus directed against Plaintiff by Defendant.

## COUNT IV
### Intentional Discrimination
### Violation of 42 U.S.C. § 3604 (b)

92. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

93. At all relevant times, Plaintiff was and/or was perceived by Defendant, through its managers, as a Brown, non-White, non-Caucasian tenant.

94. Since February 25, 2019, Defendant's managers have been aware of Plaintiff's color ( non-White or Brown).

95. Since February 25, 2019, Defendant's managers have perceived and been aware of Plaintiff's race ( as non-Caucasian).

96. Defendant participated in Coronavirus emergency assistance, benefitted from CARES and ARPA, and has been receiving funds through RRP.

97. Defendant submitted documentation in support of RRP applications by other tenants of different protected classes than Plaintiff's.

98. Defendant discriminated against Plaintiff by refusing to cooperate with DHCD so that this agency may timely process Plaintiff's RRP renewal application No. 2286702-2.

99. Plaintiff discriminated against Plaintiff in the terms, conditions, or privileges of rental and in the provision of services because of race (non-Caucasian) and color (non-White or Brown).

100.    Defendant did not provide a legitimate reason for its refusal to cooperate with DHCD.

101.    There is a link between Defendant's discriminatory animus and Defendant's challenged decision of refusing cooperation with DHCD, which resulted in denial of RRP funds.

102.    Therefore, Defendant's adverse action was motivated by an illegitimate criterion.


## COUNT V
### Intentional Discrimination
### Violation of 42 U.S.C. § 1981

103.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

104.    At all times relevant, Defendant has been aware that and/or has perceived Plaintiff as a non-White person.

105.    Defendant, as a landlord, intentionally treated Plaintiff differently than similarly situated White tenants.

106.    Defendant submitted RRP applications, whether initial or renewal ones, on behalf of White tenants.

107.    As the proximate cause of Defendant's differential treatment, these White tenants benefitted from the federal emergency rental assistance and were not prevented from performing their contractual duties.

108.    By refusing to cooperate with DHCD and accept payment from federal assistance funds, Defendant interfered with Plaintiff in enjoying the same and the full and equal benefit of laws and proceedings as is enjoyed by White citizens.

109.    By refusing to cooperate with DHCD and accept payment from federal assistance funds, Defendant deprived Plaintiff from enjoying the same rights as similarly situated White tenants in making and enforcing the Apartment Lease Contract.

110.    Specifically, Defendant denied Plaintiff the right to carry out his contractual duty of immediate performance, i.e., rent payment, by the use of federal emergency rental assistance, as authorized by public policy.

111.    Defendant falsely claims that Plaintiff has not performed his contractual duty by failing to pay rent payment.

112.    By intentionally depriving Plaintiff of the benefit of a federal emergency rental assistance program, Defendant did not perform his duty of good faith and fair dealing in the performance and enforcement of the Apartment Lease Contract, which is imposed upon both parties.

113.    At all times relevant, Defendant has been denying Plaintiff the right to perform, modify, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

114.    Therefore, Defendant intentionally discriminated against Plaintiff because he is a non-White tenant.

### COUNT VI
### Retaliation
### Violation of 42 U.S.C. § 1981

115.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

10

Case 1:22-cv-01421-CMH-WEF   Document 1   Filed 12/13/22   Page 11 of 25 PageID# 11

116.     At all times relevant, Plaintiff has been complying with the Apartment Lease Contract.

117.     At all times relevant, Plaintiff has been performing his contractual duties, including payment of rent and fees.

118.     During the Coronavirus crisis, Plaintiff has benefitted and exercised due diligence in performing his contractual duties, including payment of rent and fees, by benefitting from federal emergency rental assistance programs.

119.     Plaintiff complained to DHCD because of Defendant's refusal to cooperate and accept assistance funds on behalf of Plaintiff.

120.     Plaintiff complained to DHCD because Defendant submitted RRP applications, whether initial or renewal ones, on behalf of White tenants, but refused to submit an application on behalf of Plaintiff, who is a non-White tenant.

121.     As the proximate cause of Defendant's action, these White tenants benefitted from the federal emergency rental assistance and were not prevented from performing their contractual duties.

122.     Plaintiff, on the other hand, is now falsely and maliciously presented by Defendant as a bad tenant who failed to perform his contractual duties.

123.     These acts are unlawful and discriminatory. There is no legitimate reason in refusing cooperation with DHCD when a tenant is non-White and accepting cooperation with the same agency regarding the same issue when a similarly situated tenant is White.

124.     Plaintiff complained to DHCD because Defendant's unlawful acts are discriminatory.

125.     Complaining to DHCD about being deprived by Defendant from participating and enjoying the benefits of a federal program is a protected activity that is guaranteed by the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

126.     Because Plaintiff engaged in a protected activity, Defendant retaliated against Plaintiff and denied him the right to renew and modify his Apartment Lease Contract.

127.     Because Plaintiff engaged in a protected activity, Defendant retaliated against Plaintiff and denied him the right to enter into a contract, perform, modify, and the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship.

128.     On or about November 1, 2022, Plaintiff requested that Defendant extend/renew the Apartment Lease Contract.

11

129.    On or about November 11, 2022, which corresponds to Veterans' Day – a federal Holiday – Defendant's counsel sent Plaintiff an email demanding that he do not contact Defendant regarding the renewal of his lease.

130.    As the November 11, 2022 email indicates, Defendant and its counsel refuse to address Plaintiff's request and extend/renew the Apartment Lease Contract.

131.    Refusing to extend/renew the Apartment Lease Contract is an adverse action maliciously directed by Defendant toward Plaintiff to deprive him of a right that is guaranteed and protected by the Fair Housing Act.

132.    As evidenced by counsel's email, Defendant was aware of Plaintiff's protected activity.

133.    Therefore, a causal connection exists between Plaintiff's protected activity and Defendant's adverse action.

134.    Defendant's unlawful detainer actions/nonsuits constitute evidence of retaliatory animus directed against Plaintiff by Defendant.

## COUNT VII
### Defendant's Property Rights as a Citizen
### Violation of 42 U.S.C. § 1982

135.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

136.    Plaintiff is a United States citizen.

137.    At all times relevant, Plaintiff was in compliance with the terms and conditions of the Apartment Lease Contract.

138.    Plaintiff, a non-White tenant, performed his contractual duties, including rent and fees payment, through the federal emergency rental assistance programs.

139.    Defendant retaliated against Plaintiff by denying him the extension or the renewal of the Apartment Lease Contract because of the source of funds allocated to assist him in paying rent arrears and fees.

140.    Defendant did not discriminate, retaliate, or otherwise, denied similarly situated White tenants, who are citizens of the United States, the right to extend or renew the Apartment Lease Contract.

141.    Defendant denied Plaintiff, a citizen of the United States, the equal right of leasing an apartment – a real estate property.

142.    By doing so, Defendant intentionally and maliciously violated Plaintiff's rights to property as United States citizen.

## COUNT VIII
### Exclusion from and Intentional Discrimination in a Federal Program
### Violation of 42 U.S.C. § 2000d
### Title VI of the Civil Rights Act of 1964

143.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

144.    RRP is a federal emergency rental assistance program that has been managed by DHCD. This emergency rental assistance program was enacted by the United States Congress pursuant to CARES and ARPA.

145.    As shown by his 2019 tax return (pre-COVID 19), Plaintiff's individual income was in excess of $100,000.00.

146.    However, as demonstrated by his 2020 and 2021 tax returns, his individual income sharply decreased (due to slow business activity) and, thus, Plaintiff became eligible and qualified for RRP.

147.    Plaintiff participated in RRP by duly and timely submitting application No. 2286702.

148.    Plaintiff participated in RRP by duly and timely submitting renewal application No. 2286702-2.

149.    Defendant participated in RRP and received federal assistance.

150.    As shown by DHCD's landlord application No.165499 activity log, Defendant submitted its application on January 27, 2022.

151.    At all times relevant, Defendant has been aware that and/or has perceived Plaintiff as a non-White, Brown person.

152.    As a result of its application No.165499, Defendant received $8,180.00 in federal assistance on May 7, 2022.

153.    RRP was extended and a deadline for submitting initial or renewed applications for emergency assistance was set to May 15, 2022 before midnight.

154.    On May 11, 2022, Plaintiff timely submitted his RRP renewal application No. 2286702-2 for additional emergency assistance.

155.    Although Defendant was timely informed of Plaintiff's pending RRP renewal application No. 2286702-2, Defendant refused to cooperate with DHCD and submit documents in support of this new application so that it may receive additional rent payment.

156.    However, Defendant submitted RRP applications in support of similarly situated White tenants' requests for initial and/or additional emergency rental assistance.

157.    By doing so, Defendant excluded Plaintiff from participation in, denied him the benefits of, and subjected him to discrimination under RRP, which is a program that received federal funds by virtue of CARES and ARPA.

158.    Defendant excluded and discriminated against Plaintiff on account of his race (non-Caucasian or non-White) and his color (Brown).

**COUNT IX**
**Breach of Contract**

159.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

160.    In good faith, Plaintiff entered with Defendant into the Apartment Lease Contract on February 25, 2019.

161.    At all times relevant, Plaintiff performed his contractual duties within the meaning of the terms and conditions of the Apartment Lease Contract.

162.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *See* Restatement (Second) of Contracts § 205 (1981).

163.    Defendant did not show any good faith or fair dealing in the performance and enforcement of the Apartment Lease Contract.

164.    Under the terms of this Contract, Plaintiff is required to make a monthly payment of rent and fees in exchange of occupying the premises disputed herein.

165.    At all times relevant, Plaintiff fully performed his duty. Full performance of a duty under a contract discharges the duty. *See* Restatement (Second) of Contracts § 235 (1981).

166.    Once the source of the funds originate from a federal program enacted by a public law or regulation, Defendant is required to strictly abide by said public law or regulation in performing its contractual duties.

14

167.    Under the terms and conditions of the aforementioned Contract, Defendant is required to accept monthly payments of rent and fees, regardless of the source of the funds, as long as this source is lawful.

168.    In the instant matter, Defendant refused to fully abide by the provisions of the Fair Housing Act, CARES, and ARPA.

169.    Without justification, Defendant refused funds originating from a federal emergency rental assistance program to have one of its contractual duties performed.

170.    Under the implied terms[1] of the Contract, payment of rent and fees through funds originating from a federal assistance program is a legally enforceable obligation of Defendant to Plaintiff.

171.    Defendant is patently in violation or breach of that obligation when it refuses to accept monthly payment of that nature.

172.    A failure, without justification, to perform *all or any part* of what is promised in a contract, *is a breach thereof. See* Restatement (First) of Contracts § 314 (1932).

173.    As the proximate result of the aforementioned breach, Defendant subjected Plaintiff to injury and caused him damages.

174.    Defendant failed to fully perform its contractual duties and strictly abide by provisions of federal law.

175.    Defendant has heretofore falsely alleged that Plaintiff is in material noncompliance with the Contract for failure to pay rent.

176.    This falsely alleged noncompliance is a discriminatory pretext to deny Plaintiff renewal or extension of the Contract.

177.    Plaintiff fully performed his duty when he informed Defendant that he was eligible and qualified for RRP.

178.    Defendant did not exercise good faith or due diligence to receive payment from a program in which it participates.

179.    As shown by Ms. Grey's October 12, 2022 email to Plaintiff, Defendant failed to submit a timely RRP application to receive payment. *When performance of a duty under a contract is due any non-performance is a breach. See* Restatement (Second) of Contracts § 235 (1981).

---

[1] A contract is legal and enforceable when its terms, whether implied or express, do not violate the law.

180.    On February 25, 2019, upon entering into the Apartment Lease Contract with Defendant, Defendant misrepresented to Plaintiff that its property is quiet and that Plaintiff, as a tenant, will enjoy quiet and tranquility.

181.    Based on this misrepresentation, Plaintiff entered into said Contract with Defendant.

182.    The Contract contains language to quiet enjoyment and tranquility under implied warranty.

183.    Since February 25, 2022, Plaintiff had been subjected to false fire alarms on a recurrent basis on Defendant's premises.

184.    On numerous occasions, those false alarms were set off late at night when Plaintiff was asleep.

185.    Those false alarms were also set off during the wee hours, forcing Plaintiff and other tenants to rush out, sometimes under the rain.

186.    Those alarms were set off several times within a period of 24 hours.

187.    On all occasions, no fire was ever detected.

188.    These noxious nuisances were reported by Plaintiff and other tenants to AVFRD.

189.    AVFRD has kept records on Plaintiff's and other tenants' reports. Those records are evidence of misrepresentation by Defendant.

190.    On many occasions, Plaintiff complained to Defendant about the false fire alarms. Defendant, however, ignored Plaintiff's complaints under the pretext that Plaintiff was in material noncompliance with rent, all the while his RRP application was pending.

191.    Plaintiff's manifestation of assent when he signed the Contract was induced by both a fraudulent and a material misrepresentation by Defendant upon which Plaintiff relied. *See* Restatement (Second) of Contracts § 164 (1981).

## COUNT X
### Negligence

192.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

16

193.     Defendant, as an RRP participant and recipient of federal assistance, failed to fulfill its duty, i.e., Defendant failed to cooperate with DHDC and submit documentation in relation with RRP renewal application No. 2286702-2.

194.     Defendant breached its duty by refusing to cooperate with DHDC and submit documents relating to Plaintiff's RRP renewal application No. 2286702-2.

195.     Defendant's breach of duty is the proximate cause of Plaintiff's RRP application being incomplete and, therefore, denied by DHDC.

196.     Defendant's breach of duty caused Plaintiff damages.

## COUNT XI
## Fraud

197.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

198.     Despite the fact that Plaintiff has secured renter's insurance since February 25, 2019, Defendant falsely represented that Plaintiff must pay an additional monthly premium for insurance. See Va. Code § 55.1-1206.

199.     As a Virginia renter, Plaintiff's insurance policy covers both his personal property and personal liability for any occurrence within Defendant's premises. The policy covers personal property for up to $10,000.00 less a deductible of $500.00. Moreover, this policy covers personal liability for up to $100,000.00 per occurrence. Furthermore, it covers medical expenses for up to $1,000.00 per person and for any loss amount to $2,000.00 per occurrence.

200.     Plaintiff's vehicle is covered by a separate insurance policy for up to a $1,000,000.00 per occurrence.

201.     In violation of Va. Code § 55.1-1206 (A), Defendant did not notify Plaintiff in writing that Plaintiff has the right to obtain his own insurance policy.

202.     In accordance with Va. Code § 55.1-1206 (A), Plaintiff, on February 25, 2019, elected to obtain his own policy and submitted to the landlord written proof of such coverage by Assurant. Since then, Plaintiff has maintained such coverage at all times during the term of the successive rental agreements.

203.     As shown by itemized invoices and the Apartment Lease Contract, Defendant has been fraudulently charging Plaintiff a monthly $20.00 for a "master insurance" policy.

204.     Defendant's Apartment Lease Contract uses misleading and ambiguous language, such as "You are required" to induce tenants into opting in Defendant's so-called "master

insurance policy", notwithstanding their decision to purchase their own insurance coverage.

205.    Specifically, the Contract uses deceptive language inducing tenants into checking boxes that will later allow Defendant to charge them a monthly premium:

> Additionally, you are [*check one*]    required to purchase personal liability insurance    not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

206.    Since February 25, 2019, Defendant has always been aware that Plaintiff has kept the required insurance active.

207.    Defendant intentionally charged Plaintiff a policy premium to which monthly invoices and the Contract refer as a "master insurance" premium.

208.    The use of deceptive language shows that Defendant has a culpable state of mind.

209.    There is a conscious discrepancy between Defendant's misrepresentation on the Contract and the fact that Plaintiff has always been covered by insurance as required by Va. Code § 55.1-1206.

210.    As a matter of law, a representation that the maker knows to be capable of two interpretations, one of which he knows to be false and the other true is fraudulent if it is made: (a) with the intention that it be understood in the sense in which it is false, or (b) without any belief or expectation as to how it will be understood, or (c) with reckless indifference as to how it will be understood. *See* Restatement (Second) of Torts § 527 (1977).

211.    Defendant's conduct and misleading stratagems show an intent to mislead.

212.    Plaintiff has reasonably relied on Defendant's false representation that he is required to buy the so-called "master insurance" policy in order to be in compliance with the terms and conditions of his tenancy.

213.    This resulted in months of Plaintiff paying the premium.

214.    Plaintiff's reliance upon Defendant's fraudulent misrepresentation is justifiable because the matter misrepresented is material.

215.    By engaging in the above-described act of misrepresentation, Defendant had reason to know that Plaintiff would regard the induced purchase of additional insurance, i.e.,

"master insurance", as important in determining his choice of action, although a reasonable man would not so regard it. *See* Restatement (Second) of Torts § 538 (1977).

216.     In violation of Va. Code § 18.2-178, Defendant obtained from Plaintiff, by false pretense and/or token, his signature to a writing, i.e., Apartment Lease Contract, with the intent to defraud him of money.

217.     Clearly, Defendant committed a criminal act and/or practice as defined in § 18.2-178. This criminal act and/or practice insurance as defined in §§ 38.2-117 (personal injury liability), 38.2-118 (property damages liability), and 38.2-130 (homeowner insurance).

218.     Therefore, Defendant committed insurance fraud as defined by Va. Code § 52-36.

219.     One who fraudulently makes a material misrepresentation of fact, opinion, intention, or law, for the purpose of inducing another to act or refrain from acting, is subject to liability for economic loss caused by the other's justifiable reliance on the misrepresentation. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (2020).

220.     In short, Defendant made (1) a false representation (2) of a present, material fact, (3) intentionally and knowingly, (4) with intent to mislead, (5) Plaintiff reasonably relied on Defendant's misrepresentation to enter/renew the Apartment Lease Contract, and (6) this reasonable reliance on Defendant's false representation resulted in damages.

## COUNT XII
## Unjust Enrichment

221.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

222.     By paying the "master insurance" premium every month, Plaintiff conferred a benefit upon Defendant.

223.     By being induced to pay a monthly premium to Defendant, Plaintiff had a reasonable expectation rent was being paid.

224.     Defendant has known of both the benefit conferred and the expectation of payment.

225.     Defendant has known that Plaintiff was covered by his own insurance policy and, thus, in compliance with the terms and conditions of tenancy. Nevertheless, Defendant continued to rack up a record payment amount of monthly premiums since February 25, 2019.

226.     Defendant has been unjustly enriching itself at the expense of Plaintiff.

227.     Defendant has accepted or retained the benefit conferred upon him by Plaintiff without offering any service for its value

228.     Under the quasi-contract theory, Defendant's act is inequitable and is liable to Plaintiff for restitution.

## COUNT XIII
## Abuse of Process

229.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

230.     Defendant participated in RRP and had knowledge that payment of owed rent and fees was guaranteed.

231.     Plaintiff informed Defendant that, based on his income and RRP requirements, he was eligible and qualified for emergency rental assistance.

232.     While Plaintiff's RRP application No. 2286702 was pending with DHCD, Defendant filed its first unlawful detainer action with the Loudoun County General District Court on April 13, 2022.

233.     On May 7, 2022, Defendant received a payment of $8,180.00 for rent arrears and fees from DHCD on behalf of Plaintiff.

234.     On May 11, 2022, Plaintiff informed Defendant that he timely applied for additional emergency rental assistance. Again, Plaintiff informed Defendant that, based on his income and RRP requirements, he was eligible and qualified for additional emergency rental assistance.

235.     Upon receiving federal assistance funds through RRP, Defendant filed a nonsuit motion, which was granted by the Loudoun County General District Court on April 13, 2022 on May 25, 2022.

236.     Instead of submitting documentation to support Plaintiff RRP renewal application, Defendant refused to cooperate with DHCD. However, Defendant submitted RRP applications for similarly situated White tenants.

237.     Intentionally discriminating against Plaintiff and, thus, excluding him from participating in a federal emergency rental assistance program, Defendant improperly and unlawfully used the legal process to evict Plaintiff and rent the apartment occupied by Plaintiff for a higher price.

238.     Defendant's abuse of the legal process was motivated by greed and racial animus.

239.     Defendant's abuse of the legal process was motivated by its belief that Defendant would be intimidated and, thus, abandon the premises.

240.    Defendant's abuse of the legal process was motivated by a clear intent to harm Plaintiff.

241.    Defendant and its managers did not exercise any due diligence in seeking the less costly, alternative means to collect unpaid rent.

242.    In vain, Plaintiff tried to contact Defendant's counsel in order to resolve the instant matter through DHCD. However, Defendant's counsel has heretofore refused to return Plaintiff's calls. Instead, Defendant's counsel insists on refiling a second unlawful detainer action and threatened "full redemption" in his September 13, 2022 email.

243.    In the same email, he stated to Plaintiff: "As you are aware, Virginia law no longer requires landlords to apply or pursue rental assistance on behalf of their tenants in order to initiate or pursue legal action to gain possession of their leased premises due to nonpayment."

244.    This litigious behavior constitutes a pattern. As evidenced by an email exchange dated May 11, 2022, between Ms. Parades and Plaintiff, Ms. Parades threatened *further* legal action against Defendant.

245.    The word "further" in Ms. Parades's email speaks of Defendant's intent to initiate legal action against Plaintiff regardless of his willingness to perform his contractual duty of paying rent.

246.    It is patently clear that Defendant is using the legal process for the ulterior motive or improper purpose of evicting Plaintiff, despite the latter's willingness and ability to pay owed rent and fees.

247.    This is clearly demonstrated by the pattern of initiating unlawful detainer actions and nonsuiting them. Seeking nonsuits supports the fact that Defendant's allegations of nonpayment are false.

248.    Moreover, nonsuits support the fact that Defendant's actions are malicious and have no other motive but to abuse the legal system and unlawfully evict Plaintiff from the premises.

249.    The pattern of threats and litigious conduct is evidence of abuse of process. This outrageous behavior is calculated with the undeniable purpose to harm Plaintiff and make him homeless.

250.    One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process. *See* Restatement (Second) of Torts § 682 (1977).

**COUNT XIV**
**Intentional Infliction of Emotional Distress**

251.     Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

252.     Defendant's refusal to cooperate with DHCD caused Plaintiff's RRP renewal application to be denied.

253.     By unlawfully excluding and discriminating against Plaintiff as to his participation in a federal emergency rental assistance program, Defendant has maliciously exposed Plaintiff to eviction.

254.     Be it reckless or intentional, Defendant's conduct is egregious.

255.     By engaging in such a conduct, Defendant was motivated by racial animus and the desire to retaliate against Plaintiff for openly asserting his housing rights.

256.     Defendant has been engaging in such a pattern of reprehensible acts despite its knowledge that Defendant is 57 years old – a very advanced age to be in a homeless shelter – and that eviction will ultimately lead to homelessness.

257.     In fact, Defendant's motive, as translated by its calculated decisions, is to make Plaintiff homeless – not to collect rent. This further shown by its decisions to nonsuit its unlawful detainer actions.

258.     During the COVID-19 crisis, Defendant was offered by Plaintiff a myriad of solutions and compromises to resolve the present dispute. Defendant refused and resorted to the legal process.

259.     Plaintiff, as supported by medical reports from New York healthcare professionals, was traumatized by an episode of homelessness in his life. The cause Plaintiff's homelessness was caused by former landlords' unlawful acts of abuse, harassment, discrimination, and retaliation – acts which are closely similar to Defendant's. Records show that federal courts ruled in Plaintiff's favor to redress those abuses.

260.     As the proximate cause of Defendant's egregious conduct, Defendant is now suffering emotional distress and seeking therapy by licensed healthcare professionals in Virginia.

261.     Legal action by Defendant and its counsel have no other purpose but to coerce Plaintiff into abandoning the premises for good. Once vacant, Defendant will rent the apartment for a higher price.

262.    These acts have been calculated to intimidate Plaintiff and cause him tremendous fear and trauma.

263.    Defendant's conduct is extreme, outrageous, and intolerable.

264.    Undeniably, there is a causal connection between Defendant's egregious conduct and Plaintiff's resulting emotional distress.

265.    The resulting emotional distress is severe.

## VIII.    JURY TRIAL DEMAND

266.    Plaintiff demands a trial by jury as to each and every triable issue.

## IX.    PRAYER FOR RELIEF

267.    **Wherefore,** as stated above, damages in this controversy exceed the sum or value of $75,000.00, exclusive of interest and costs, and need to be ascertained. As such, Plaintiff respectfully requests that the Court:

(a) Based on Defendant's misrepresentations and frauds, declare the Apartment Lease Contract void, voidable, and unenforceable.

(b) Order restitution of all monies paid to Defendant by Plaintiff counting from the day Plaintiff entered into said Contract with Defendant up to the closure of the present matter;

(c) Order injunctive relief;

(d) Grant compensatory damages;

(e) Grant punitive damages;

(f) Grant incidental, liquidated, reliance, and consequential damages as the result of Defendant's breach of contract;

(g) Award court costs; and

(h) Grant any and all further relief this Court deems just and proper.

Respectfully submitted on December 13, 2022.

Andrew A. Aquila, *pro se*
19800 Cornerstone Square, Apt. 304
Ashburn, VA 20147

Telephone: (202) 812-2070
Email: andrew.a.aquila@icloud.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_Alexandria_ DIVISION

FILED

_Andrew A. Aquila_
_____
Plaintiff(s),

2022 DEC 13  P 2: 17

v.

Civil Action Number: 1:22CV1421

_Street Broad Vista Terrace LLC_
_____
Defendant(s).

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of _COMPLAINT_.
(Title of Document)

_Andrew A. Aquila_
Name of _Pro Se_ Party (Print or Type)

_Aquila_
Signature of _Pro Se_ Party

Executed on: _12/13/2022_ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of _Pro Se_ Party (Print or Type)

_____
Signature of _Pro Se_ Party

Executed on: _____ (Date)