

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| Andrew A. Aquila, | |
| *Plaintiff,* | |
| *v.* | Case No.: 1:22-cv-01421 (CMH/WEF) |
| SREIT Broad Vista Terrace, L.L.C., Highmark Residential, L.L.C., Starwood Property Trust, Inc., Kathleen Grey, and Andrea Parades. | JURY TRIAL DEMANDED |
| *Defendants.* | |

**FIRST AMENDED COMPLAINT**

## I.    NATURE OF THE ACTION

1. This is a civil action alleging violations of the Fair Housing Act, the Civil Rights Act of 1866, and Title VI of the Civil Rights Act of 1964. It also alleges intentional discrimination on account of elderliness (Va. Code § 36-96.3), intentional discrimination on account of source of funds (Va. Code § 36-96.3) and retaliatory conduct under the Virginia Residential Landlord and Tenant Act (VRLTA)(Va. Code § 55.1-1258). In addition, this action alleges insurance fraud, prohibited practices under the Virginia Consumer Protection Act, unjust enrichment, breach of contract, breach of implied covenant of good faith and fair dealing, negligence, negligence per se, defamation, defamation per se, abuse of process, and intentional infliction of emotional distress.

2. These violations arise of Defendant's violations of the Coronavirus Aid, Relief, and Economic Security (CARES) Act (Public Law 116-136) and the American Rescue Plan Act of 2021 (ARPA) (Public Law 117-2).

3. Both CARES and ARPA were enacted to provide rental emergency relief to eligible households, such as Plaintiff, and prohibit landlords from filing unlawful detainer actions against these covered tenants. CARES and ARPA are codified by 15 U.S.C. §§ 9058, 9058a, and 9058c.

4. Plaintiff has standing to sue Defendants because (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of Defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of this Court.

5. One of the immediate injuries in fact sustained by Plaintiff is the negative effect of Defendants' defamatory and malicious allegations on the adjudication of his security clearance. *See* 50 U.S.C. § 3341, 32 CFR § 147.19(b), and 32 CFR § 147.8 (Guideline F – Financial considerations).

6. As the proximate result of Defendants' abuse of process and false allegations in State courts, prospective landlords, employers, and creditors will take adverse actions against Plaintiff. "Adverse action" is defined by 15 U.S.C. § 1681a(k).

## II.    STATE ACTIONS AND APPEAL

7. Abusing process, Defendants filed two retaliatory unlawful detainer actions, Case No. GV22006593-00 and Case No. GV22010033-00, in the Loudoun County General District Court, which is a court not of record. Va. Code §§ 8.01-126; 16.1-69.5(a) and (b).

8. Both cases arise from the same cause of action.

9. Defendants filed two motions before the Loudoun County General District Court to nonsuit said unlawful detainer actions.

10. The first nonsuit motion, submitted as a matter of right, was granted on May 25, 2022. Va. Code § 8.01-380(B).

11. When submitting a second nonsuit motion, counsel for Defendants did not inform the Loudoun County General District Court of the first nonsuit. "When suffering a nonsuit, a party shall inform the court if the cause of action has been previously nonsuited." Va. Code § 8.01-380(B).

12. The second nonsuit motion, which was submitted to the Loudoun County General District Court, was also granted on December 9, 2022.

13. Plaintiff did not consent to the second nonsuit motion because he brought counterclaims against Defendant. Va. Code § 8.01-380(D).

14. The Loudoun County General District Court did not allow Plaintiff's counterclaims to stand pending independent adjudication. Va. Code § 8.01-380(D).

15. The Loudoun County General District Court did not issue a final judgment adjudicating Plaintiff's counterclaims on the merits.

16. On February 8, 2023, Defendant SREIT Broad Vista Terrace, L.L.C. filed a third unlawful detainer action. This pending action is docketed under No. GV23001321-00.

17. This third action was filed while an appeal was and is still pending in the Loudoun County Circuit Court. This appeal is docketed under No. CL23000190-00.

18. Plaintiff petitioned the Circuit Court to rule on whether there was error or abuse of discretion[1] when (a) in the absence of any prior notice to Plaintiff, the District Court granted Defendant SREIT Broad Vista Terrace, L.L.C. a second nonsuit motion and when (b) Plaintiff had already asserted counterclaims against nonsuiting Defendant.

## III.    PARTIES

19. Plaintiff Andrew A. Aquila is an individual who is currently residing at 19800 Cornerstone Square, Ashburn, Virginia 20147.

20. Plaintiff has been residing at this place since February 25, 2019.

---

[1] The Virginia Supreme Court ruled:

> The plaintiffs contend that the appeal should be dismissed because an order of nonsuit is not a final, appealable order. Alternatively, plaintiffs argue that the action had not been "submitted to the court for decision," within the meaning of the nonsuit statute, and that entry of the nonsuit order was proper... where a dispute exists whether the trial court properly granted a motion for nonsuit, as in this case, we hold that the order of nonsuit is a final, appealable order within the meaning of Code § 8.01–670(A)(3) ("any person may present a petition for an appeal to the Supreme court if he believes himself aggrieved ... [b]y a final judgment in any ... civil case"). *See Iliff v. Richards*, 221 Va. 644, 649–50, 272 S.E.2d 645, 648 (1980) (order of nonsuit is final, appealable judgment when it improperly dismisses a defendant against whom a crossclaim has been asserted).

*Wells v. Lorcom House Condominiums' Council of Co-Owners*, 237 Va. 247, 251, 377 S.E.2d 381, 383 (1989).

3

21. Defendant SREIT Broad Vista Terrace, L.L.C. is a Limited Liability Company authorized to do business in the Commonwealth of Virginia. Its Principal Office is located at 1601 Washington Avenue, Suite 800, Miami, Florida 33139.

22. For the purposes of the present action, its known business place is located 19900 Broad Vista Terrace, Ashburn, Virginia 20147.

23. Defendant SREIT Broad Vista Terrace, L.L.C. is Plaintiff's landlord.

24. Upon information and belief, Defendant SREIT Broad Vista Terrace, L.L.C. owns Acadia Apartments, the apartment complex where Plaintiff has been residing since February 25, 2019. Apartment No. 304, which is located at 19800 Cornerstone Square, Ashburn, Virginia 20147, is subject to this controversy.

25. Defendant Highmark Residential, L.L.C. is a Limited Liability Company authorized to transact business in the Commonwealth of Virginia. Its Principal Office is located at 5429 LBJ Freeway, Suite 800, Dallas, Texas 75240.

26. Defendant Highmark Residential, L.L.C. is the manager of Acadia Apartments. Its known place of business is 19900 Broad Vista Terrace, Ashburn, Virginia 20147.

27. Defendant Kathleen Grey is a natural person and employee of Highmark Residential, L.L.C. She is the Community Director of Acadia Apartments. Her place of employment is located at 19900 Broad Vista Terrace, Ashburn, Virginia 20147.

28. Defendant Andrea Parades is a natural person and employee of Highmark Residential, L.L.C. She is the Leasing Manager of Acadia Apartments. Her place of employment is located at 19900 Broad Vista Terrace, Ashburn, Virginia 20147.

29. Upon information and belief, both Defendant SREIT Broad Vista Terrace, L.L.C. and Defendant Highmark Residential, L.L.C. are affiliates or subsidiaries of Defendant Starwood Property Trust, Inc.[2]

30. Defendant Starwood Property Trust, Inc. is organized under the laws of the State of Maryland. Its Principal Office is located at 7 St. Paul Street, Suite 820, Baltimore Maryland 21202.

31. Starwood Property Trust, Inc. (STWD) is a public company traded at the New York Stock Exchange (NYSE).

---

[2] To ascertain ownership, Defendant SREIT Broad Vista Terrace, L.L.C., Defendant Highmark Residential, L.L.C., and Defendant Starwood Property Trust, Inc.[2] must file their Disclosure Statements pursuant to Fed. R. Civ. P. 7.1.

32. Defendant Starwood Property Trust, Inc. is liable to Plaintiff for the unlawful acts committed by its subsidiaries Defendant SREIT Broad Vista Terrace, L.L.C. and Defendant Highmark Residential, L.L.C.

33. Defendants are liable to Plaintiff severally and jointly for each and every claim herein brought.

## IV.    JURISDICTION

34. This Court has original jurisdiction over the present controversy pursuant to 28 U.S.C. §1331.

35. Pursuant to 28 U.S.C. §1332(a)(1), this Court has original jurisdiction because the matter in controversy is between citizens of different States and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

36. Pursuant to 28 U.S.C. §1343, this Court has original jurisdiction because Plaintiff has suffered deprivations caused by the unlawful acts of Defendants. These unlawful acts have deprived Plaintiff of rights secured by Acts of Congress which provide for equal rights of citizens or of all persons within the jurisdiction of the United States.

37. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over State and common law claims brought in this civil action.

38. This Court may exercise *in rem* and *in res* jurisdiction.

## V.    VENUE

39. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper because the events or omissions giving rise to the claims herein articulated occurred in the Eastern District of Virginia and the property that is the subject of the action is located in the same District.

## VI.    FACTUAL ALLEGATIONS

40. On or about May 11, 2022, Defendants refused payment of rent made by Plaintiff through federal emergency rental assistance to which he was eligible and qualified through the Virginia Rent Relief Program (RRP).

41. RRP is a federal emergency rental assistance program that has been managed by the Virginia Department of Housing and Community Development (DHCD). This emergency rental assistance program was enacted by the United States Congress pursuant to CARES and ARPA. *See* 15 U.S.C. §§ 9058, 9058a, and 9058c.

42. Upon information and belief, Virginia has exhausted all funding available for rental assistance through RRP on October 14, 2022.

43. In this action's context, Plaintiff is an "eligible household", as defined by 15 U.S.C. § 9058a(k)(3).

44. The property in which Plaintiff's dwelling is located is a "covered property", as defined by 15 USC § 9058(a)(2).

45. As provided by 15 U.S.C. § 9058a(c), rental emergency assistance "shall be provided for a period not to exceed 12 months except that grantees may provide assistance for an additional 3 months only if necessary to ensure housing stability for a household subject to the availability of funds."

46. Plaintiff did not exceed this statutory limitation.

47. Defendants refused to cooperate with DHCD and apply on Plaintiff's behalf for emergency rental assistance that would have covered the allegedly unpaid rent they are now claiming.

48. The amount of rent and fees claimed by Defendants is disputed by Plaintiff because of Defendants' violations of CARES and ARPA.

49. Plaintiff is not liable for the payment of any rent and/or fees that could have been satisfied by RRP.

50. In lieu of cooperating with DHCD, as requested by Plaintiff and mandated by federal law, Defendants' Leasing Manager, Andrea Parades, refused to submit documents in support of Plaintiff's RRP renewal application.

51. As evidenced by an email exchange dated May 11, 2022, between Defendant Parades and Plaintiff, Defendant Parades threatened "further legal action" against Plaintiff.

52. As evidenced by her email to Plaintiff, Defendant Parades threatened legal action while Defendant was already benefitting from and receiving, on the very same day, federal assistance through DHCD.

53. Prior to this threat of legal action, Plaintiff informed Defendants that he was eligible and qualified for additional emergency assistance and, therefore, he timely submitted an RRP renewal application. This information was communicated to Defendant Parades on May 11, 2022. An email exchange indicates that Plaintiff provided Defendant Parades with a reference as to his RRP renewal application No. 2286702-2.

54. Despite Plaintiff's multiple requests, Defendant SREIT Broad Vista Terrace, L.L.C. refused, on May 11, 2022 or thereafter, to submit to DHCD its Taxpayer Identification Number and Certification (Form W-9) and other records in support Plaintiff's RRP renewal application No. 2286702-2.

55. As unambiguously asserted in an email exchange with Plaintiff, on or about September 13, 2022, counsel for Defendant SREIT Broad Vista Terrace, L.L.C. willfully misrepresents that his client is not legally required to cooperate with and submit records in support of Plaintiff's RRP application to DHCD.

56. Counsel's electronic communication states that his client is not required to exercise due diligence to carry its duties under the implied covenant of good faith and fair dealing that governs their contractual relationship between landlord and tenant.

57. Instead, said communication asserts that Defendants have the right to use the legal process and *only* the legal process to remediate any material noncompliance, even when public policy suggests otherwise.

58. Defendants have not exercised diligence or shown any good faith in resolving this instant housing dispute prior to using the legal process.

59. By initiating the above-referenced unlawful detainer actions, Defendant abused the legal process. Nonsuiting them is further abuse of process.

60. On October 6, 2022, Defendant filed the second unlawful detainer action to retaliate against Plaintiff because the latter complained to DHCD regarding Defendant's refusal to cooperate.

61. An email exchange between Plaintiff and Defendants' Community Director, Defendant Kathleen Grey, indicates that the latter has been aware of Plaintiff's complaints to DHDC regarding Defendants' refusal to cooperate. This exchange of emails took place on October 12, 2022.

62. Although the second unlawful detainer action was already filed on October 6, 2022 and, hence, Defendant Grey was represented by counsel, she nonetheless contacted Plaintiff and admitted to him, as evidenced by her October 12, 2022 email, that Defendant SREIT Broad Vista Terrace, L.L.C. had not cooperated with DHCD.

63. Plaintiff met in person with Defendants' Community Director and her staff, including Defendant Andrea Parades and Phaimy Bassette, Assistant Community Director, on many occasions to discuss emergency assistance applications.

64. Since February 25, 2019, Plaintiff's move-in date, Defendant Grey and her staff have been aware of or have perceived Plaintiff as a non-Caucasian, non-White, and/or Brown person.

65. Since February 25, 2019, Defendant Grey and her staff have been aware of Plaintiff's age.

66. On November 15, 2022, William LeGrand Northcutt, the DHCD's records custodian released and certified the authenticity of documents requested by Plaintiff pursuant

FOIA/PA request. These authentic documents constitute admissible evidence as to Defendants' refusal to cooperate with DHCD.

67. Mr. Northcutt's list of documents does not show that Defendants cooperated with DHCD by submitting the required documentation related to Plaintiff's RRP application No. 2286702-2.

68. However, Mr. Northcutt's list of documents show that Defendants cooperated with DHCD by submitting to this agency documents in support Plaintiff's RRP application No. 2286702.

69. As shown by DHCD's landlord application No.165499 activity log, Defendants submitted their application on January 27, 2022.

70. This was following Plaintiff's submission of his RRP application No. 2286702 on January 25, 2022. This application was accepted and approved by DHCD, and payment of rent was made to Defendant on May 7, 2022.

71. As stated above, on May 11, 2022, Plaintiff duly and timely submitted a new application seeking extension of RRP benefits. As stated above, extension authorized by 15 U.S.C. § 9058a(c).

72. The deadline for both new and renewal applications was Sunday, May 15, 2022, at 11:59 pm.

73. Because it was timely filed, Plaintiff's RRP renewal application was accepted on June 17, 2022.

74. Despite being informed of Plaintiff's renewal application being accepted and under review, Defendants kept on refusing submission of the documents required by DHCD to process and timely approve Plaintiff's application.

75. Plaintiff was informed by DHCD that Defendants refused to cooperate and submit the documents required by this agency to process his RRP application.

76. Plaintiff communicated this information to Defendant Grey. She refused to efficiently and timely act upon it and remedy the situation.

77. On July 7, 2022, while Plaintiff's RRP application was pending, Defendant Grey signed and issued to Plaintiff a Notice of Material Noncompliance of Rent – 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises.

78. On the same day, Plaintiff was notified by Defendant Parades that Defendants had not submitted any documents pertaining to RRP and would not do so on behalf any one of their tenants.

79. On September 13, 2022, Defendants' counsel sent an email to Plaintiff informing him of the same.

80. Since February 25, 2019, Plaintiff has been subjected to false fire alarms on Defendants' premises.

81. On numerous occasions, those false alarms were set off late at night when Plaintiff was asleep.

82. Those false alarms were also set off during the wee hours, thus forcing Plaintiff and other tenants to rush out for their safety, sometimes under the rain.

83. On one occasion, those alarms were set off several times within a period of 24 hours.

84. On all occasions, no fire was ever detected.

85. These noxious nuisances were reported by Plaintiff and other tenants to the Ashburn Volunteer Fire and Rescue Department (AVFRD).

86. AVFRD has kept accurate records of those reports. Plaintiff submitted an FOIA/PA request to AVFRD for disclosure. Plaintiff is awaiting AVFRD's response.

87. Defendants did not fix this issue of false fire alarms until September 2022.

88. Despite the fact that Plaintiff and his property, as required by Virginia law, have been covered by an insurance policy since February 25, 2019, Defendants have been charging Plaintiff a monthly premium of $20.00.

89. On February 25, 2019, Plaintiff submitted to Defendants proof of insurance.

90. Plaintiff requested that Defendants opt him out of Defendants' insurance. Defendants, however, have been fraudulently misrepresenting to Plaintiff that he is required to be covered by Defendant's "master insurance."

91. Defendants are persisting in their discriminatory and retaliatory pattern.

92.  Defendants continue to abuse legal process.

93. Defendants continue to engage in these practices to coerce and intimidate Plaintiff. Although they are fully aware that Plaintiff's refutal of their allegations of nonpayment is legitimate and supported by the weight of the evidence, they continue to harass him.

94. Because Defendants refused put an end to their ongoing discriminatory practices and malicious abuse of legal process, Plaintiff filed on or about December 19, 2022, a discrimination complaint with the Office of Fair Housing and Equal Opportunity (FHEO), U.S. Department of Housing and Urban Development (HUD).

95. Anticipating that their Office's workload would not allow them to complete investigation of Plaintiff's complaint within 100 days, *see* 42 U.S.C. § 3610(a)(1)(C), the FHEO Intake Branch Chief, Region III, forwarded the complaint to the Virginia Fair Housing Office (VFHO), Department of Professional and Occupational Regulation (DPOR), for investigation. The FHEO Intake Branch Chief also suggested that Plaintiff file a civil action against Defendants within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended.

96. On December 27, 2022, Ms. Karen Taylor from VFHO contacted Plaintiff and informed him that his complaint is pending for review.

97. Defendants have knowledge that a complaint was filed with FHEO and VFHO.

98. In retaliation to Plaintiff's protected activity, Defendants issued on January 20, 2023 a Notice of Nonrenewal of Tenancy and Termination of Lease. They set the effective Termination Date for March 31, 2023.

99. The Apartment Lease Contract expired on January 18, 2023. On November 1, 2022, more than sixty (60) prior to the expiration of the Lease, Plaintiff communicated in writing to Defendants and their counsel that he intended to renew his lease.

100. Pursuant to the terms of the Contract, a written Notice of Nonrenewal of Tenancy and Termination of Lease must be served on Plaintiff sixty (60) days prior to the expiration of the Lease. Clause No. 6 unambiguously reads:

> **LEASE TERM**. The initial term of the Lease Contract begins on the 19th day of July, 2021, and ends at 11:59 p.m. the 18th day of January, 2023 .*This Lease Contract will automatically renew month-to-month unless either party gives at least 60 days written notice of termination* or intent to move-out as required by paragraph 45 (Move-Out Notice)(emphasis added).

101. Defendants manufactured a breach and/or a material noncompliance with the terms of the lease, i.e., nonpayment of rent, to deny Plaintiff renewal of his lease pursuant to Clause No. 34:

> **Lease Renewal When A Breach or Default Has Occurred**. In the event that you enter into a subsequent Lease prior to the expiration of this Lease and you breach or otherwise commit a default under this Lease, We may, at our sole and absolute discretion, terminate the subsequent Lease, even if the subsequent Lease term has yet to commence. We may terminate said subsequent Lease by sending you written notice of our desire to terminate said subsequent Lease.

102. Denial of renewal would allow Defendants to evict Plaintiff – a recipient of rental assistance – and find a prospective tenant who will be inevitably subjected to a rent increase, securing thus more profit for Defendants.

103. Meanwhile, on February 8, 2023, without serving upon Plaintiff a 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises, Defendants filed a third unlawful detainer action demanding rent payment.

104. Proper 5-Day Notice must be served upon Plaintiff because Defendants nonsuited two unlawful detainer actions before filing the third one.

105. To support their third unlawful detainer action, counsel for Defendants submitted a perjurious affidavit, executed by Defendant Grey, to mislead the State court on the maximum jurisdictional limits and have it exercise a jurisdiction that is lacking. *See* Va. Code § 16.1-77.

## VII.   CLAIMS

### COUNT I
### Intentional Discrimination
### Violation of 42 U.S.C. § 1981

106. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

107. At all times relevant, Defendants have been aware that and/or has perceived Plaintiff as a non-White person.

108. Plaintiff is an individual of North African descent.[3]

109. Defendants, as owners and managers, intentionally treated Plaintiff differently than similarly situated White tenants.

110. Defendants submitted RRP applications, whether initial or renewal ones, on behalf of White tenants.

111. As the proximate result of Defendants' differential treatment, these White tenants benefitted from the federal emergency rental assistance and were not prevented from performing their contractual duties.

---

[3] "In passing statute guaranteeing equal rights under the law, Congress intended to protect from discrimination identifiable classes of persons who were subjected to intentional discrimination solely because of their ancestry or ethnic characteristics; such discrimination is 'racial discrimination' that Congress intended statute to forbid, whether it would be classified as racial in terms of modern scientific theory." *Saint Francis College. v. Al-Khazraji*, 481 U.S. 604, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987).

112. By refusing to cooperate with DHCD and accept payment from federal assistance funds, Defendants interfered with Plaintiff in enjoying the same and the full and equal benefit of laws and proceedings as is enjoyed by White citizens.

113. Specifically, Defendants denied Plaintiff the right to carry out his contractual duty of immediate performance, i.e., rent payment, by the use of federal emergency rental assistance, as authorized by federal law and public policy.

114. Defendants falsely claim that Plaintiff has not performed his contractual duty by failing to pay rent payment.

115. Defendants' false claim is motivated by racial animus.

116. Defendants have not heretofore rationalized their discriminatory practice with any valid business reason.

117. As stated above, Defendants' alleged breach or material noncompliance is manufactured and is nothing but a pretextual reason to conceal a discriminatory motive.

118. By intentionally depriving Plaintiff of the benefit of a federal emergency rental assistance program, Defendants did not perform his duty of good faith and fair dealing in the performance and enforcement of the Apartment Lease Contract, which is imposed upon both parties.

119. At all times relevant, Defendants have been denying Plaintiff the right to perform, modify, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

120. Therefore, Defendants intentionally discriminated against Plaintiff because he is a non-White tenant.

121. As the proximate result of Defendants' unlawful discriminatory acts, Plaintiff has suffered a distinct and palpable injury.

**COUNT II**
**Retaliation**
**Violation of 42 U.S.C. § 1981**

122. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

123. At all times relevant, Plaintiff has been complying with the Apartment Lease Contract.

124. At all times relevant, Plaintiff has been performing his contractual duties, including payment of rent and fees.

125. During the COVID-19 crisis, Plaintiff has exercised due diligence in performing these contractual duties by benefitting from federal emergency rental assistance programs.

126. Plaintiff complained to DHCD because of Defendants' refusal to cooperate and accept assistance funds.

127. Plaintiff complained to DHCD because Defendants submitted RRP applications, whether initial or renewal ones, on behalf of White tenants, but refused to submit an application on behalf of Plaintiff, who is a non-White tenant.

128. As the proximate result of Defendants' differential treatment, these White tenants benefitted from the federal emergency rental assistance and were not prevented from performing their contractual duties.

129. Plaintiff, on the other hand, is now falsely and maliciously portrayed by Defendants as an irresponsible tenant who failed to perform his contractual duties.

130. These acts are unlawful and discriminatory. There is no legitimate reason in refusing cooperation with DHCD when a tenant is non-White and accepting cooperation with the same agency regarding the same issue when a similarly situated tenant is White.

131. Plaintiff complained to DHCD because Defendants' unlawful acts are discriminatory.

132. Complaining to DHCD about being deprived by Defendant from participating and enjoying the benefits of a federal program is a protected activity that is guaranteed by the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

133. On or about December 19, 2022, Plaintiff submitted a complaint alleging unlawful acts of discrimination and retaliation by Defendants to FHEO.

134. Pursuant to 42 U.S. Code § 3610(a)(1)(C), the FHEO Intake Branch Chief, Region III, forwarded Plaintiff's complaint to VFHO.

135. On December 27, 2022, Ms. Karen Taylor from VFHO contacted Plaintiff and informed him that his complaint is pending for review.

136. Defendants have knowledge that discrimination and retaliation complaints were submitted to both FHEO and VFHO.

137. In retaliation to Plaintiff's protected activity, Defendants issued on January 20, 2023 a Notice of Nonrenewal of Tenancy and Termination of Lease. They set the effective Termination Date for March 31, 2023.

138. This Notice violates the terms and conditions agreed upon in the Apartment Lease Contract, namely Clause No. 6 and Clause No. 34 relative to renewal.

139. On February 8, 2023, without serving upon Plaintiff a 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises, Defendants filed a third unlawful detainer action demanding rent payment.

140. On or about November 1, 2022, Plaintiff requested that Defendants renew the Apartment Lease Contract.

141. On or about November 11, 2022, which corresponds to Veterans' Day, Defendants' counsel sent Plaintiff an email demanding that he cease and desist from contacting Defendant Grey regarding the renewal of his lease.

142. As the November 11, 2022 email indicates, Defendants and their counsel refuse to address Plaintiff's request to renew the Apartment Lease Contract.

143. Refusal to renew the Apartment Lease Contract, based on a manufactured breach or material noncompliance, is Defendants' maliciously adverse action to deprive him of a right that is guaranteed and protected by the Fair Housing Act.

144. The alleged breach or material noncompliance is a pretext. It does not satisfy any business or public policy requirement.

145. As evidenced by counsel's email, Defendant was aware of Plaintiff's protected activity.

146. Because Plaintiff engaged in a protected activity, Defendants retaliated against him and denied him the right to renew and/or modify his Apartment Lease Contract.

147. Because Plaintiff engaged in a protected activity, Defendants retaliated against him and denied him the right to enter into a contract, perform, modify, and the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship.

148. Therefore, a causal connection exists between Plaintiff's protected activity and Defendant's adverse action.

149. Defendant's unlawful detainer actions/nonsuits constitute evidence of retaliatory animus directed against Plaintiff by Defendant.

150. As the proximate result of Defendants' unlawful retaliatory acts, Plaintiff has suffered a distinct and palpable injury.

**COUNT III**
**Intentional Discrimination**
**Violation of 42 U.S.C. § 3604 (b)**

151. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

152. At all relevant times, Plaintiff was and/or was perceived by Defendants as a Brown, non-White, non-Caucasian tenant.

153. Since February 25, 2019, Defendants have been aware of Plaintiff's color (non-White or Brown).

154. Since February 25, 2019, Defendants' have perceived and been aware of Plaintiff's race (non-Caucasian).

155. Defendants participated in the COVID-19 emergency assistance, benefitted from CARES and ARPA, and have been receiving funds through RRP.

156. Defendants submitted documentation in support of RRP applications by other tenants of different protected classes than Plaintiff's.

157. Defendants discriminated against Plaintiff by refusing to cooperate with DHCD so that this agency may timely process Plaintiff's RRP renewal application No. 2286702-2.

158. Defendants discriminated against Plaintiff in the terms, conditions, or privileges of rental and in the provision of services because of race (non-Caucasian) and color (non- White or Brown).

159. Defendants did not provide a legitimate, nondiscriminatory reason for their refusal to cooperate with DHCD.

160. There is a nexus between Defendants' discriminatory animus and Defendants' challenged decision of refusing cooperation with DHCD, which resulted in the denial of RRP funds.

161. Therefore, Defendants' adverse actions were motivated by an unlawful housing criterion.

162. As the proximate result of Defendants' discriminatory actions, Plaintiff has suffered a distinct and palpable injury.

**COUNT IV**
**Interference, Coercion, and Intimidation**
**42 U.S.C. § 3617**

163. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

164. Defendants coerced, intimidated, threatened, and interfered with Plaintiff in the exercise or enjoyment of, or on account of his having exercised or enjoyed, his Fair Housing Act's rights granted and protected by 42 U.S.C. § 3604.

165. Specifically, in an email dated May 11, 2022, Defendant Parades threatened Plaintiff, *in writing* [4], with an unwarranted legal action as he was trying to assert one of his rights under the Fair Housing Act, that is his right to rental assistance.

166. Defendant Parades engaged in this type of intimidating threats to coerce Plaintiff into relinquishing rights granted and protected by the Fair Housing Act.

167. Defendant Parades threatened Plaintiff with legal action to interfere with his efforts to secure rental assistance.

168. By denying Plaintiff documentation supporting his RRP renewal application No. 2286702-2, Defendants clearly interfered with his housing rights.

169. Under this theory, discriminatory denial of Plaintiff's participation in RRP under 42 U.S.C. § 3604(b) also constitutes a violation of 42 U.S.C. § 3617. This is so because the denial interfered with Plaintiff's performance of the Apartment Lease Contract.

170. The unlawful detainer actions filed by Defendants constitute a pattern of overt acts of intimidation. This pattern of intimidating acts has created a hostile housing environment which is, per se, a retaliatory measure against Plaintiff for having asserted and/or enjoyed his Fair Housing Act's rights.

171. Defendants are fully aware that those unlawful detainer actions are frivolous. They are not support in any fact or law. As such, this is the reason why they were nonsuited or dismissed.

---

[4] This type of conduct is unlawful and defined by HUD regulation 24 C.F.R. § 100.400 as an adverse action. Conduct made unlawful includes, but is not limited to, the following:

> Coercing a person, either orally, *in writing*, or *by other means*, *to deny or limit the benefits* provided that person in connection with the sale or *rental of a dwelling or in connection with a residential real estate-related transaction* because of race, color, religion, sex, handicap, familial status, or national origin (emphasis added).

*See* 24 C.F.R. § 100.400(c)(1).

172. By abusing legal process, Defendants' behavior is clearly motivated by coercion. Defendants' coercive pattern aims at forcing Plaintiff to abandon the premises and, at the same time, his claim of housing discrimination.

173. Needless to say, Defendants' improper purpose of abusing legal process takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself.

174. Defendants' acts of intimidation constitute a course of conduct directed at causing fear and apprehension of fear in Plaintiff's mind. This is so clearly demonstrated by Defendant's January 20, 2023, Notice of Nonrenewal of Tenancy and Termination of Lease.

175. As stated above, in compliance with Clause No. 6 of the Apartment Lease Contract, a written Notice of Nonrenewal of Tenancy and Termination of Lease must be served on Plaintiff sixty (60) days prior to the expiration of the Lease.

176. As shown by the Apartment Lease Contract, Plaintiff's lease expired on January 18, 2023. On November 1, 2022, more than sixty (60) prior to the expiration of the Lease, Plaintiff communicated in writing to Defendants and their counsel that he intended to renew his lease.

177. Noncompliance with Clause No. 6 is further evidence that Defendant's abuse of legal process is motivated by an intent to coerce, intimidate, and interfere Plaintiff and his engagement in protected activity.

178. In addition, these acts of coercion, intimidation, and interference followed Plaintiff's complaints to DHCD, FHEO and VFHO.

179. They also constitute a retaliatory pattern directed at Plaintiff for defending in State court and for bringing the instant action before this Court.

180. So, at all times relevant, Defendants were aware of Plaintiff's protected activity.

181. Defendants took adverse action against Plaintiff.

182. Indubitably, there is a causal connection between the protected activity and the adverse action.

183. The adverse action requirement encompasses coercion, intimidation, threats, or interference as listed in 42 U.S.C. § 3617.[5]

---

[5] *See, e.g., Bryant v. City of Norfolk*, No. 2:20CV26 (RCY), 2021 WL 765405, at *4 (E.D. Va. Feb. 26, 2021).

184. Plaintiff is not alleging violation of 42 U.S.C. § 3631. Therefore, his allegation that Defendants violated 42 U.S.C. § 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability.[6]

185. HUD promulgated a regulation purporting to interpret 42 U.S.C. § 3617, which includes the following in a non-exclusive list of prohibited conduct: "Retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5).

186. As the proximate result of Defendants' adverse actions, Plaintiff has suffered a distinct and palpable injury.

### COUNT V
### Plaintiff's Property Rights as a Citizen
### Violation of 42 U.S.C. § 1982

187. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

188. Plaintiff is a United States citizen of North African ancestry.

189. At all times relevant, Plaintiff was in compliance with the terms and conditions of the Apartment Lease Contract.

190. Plaintiff, a non-White tenant, performed his contractual duties, including rent and fees payment, through the federal emergency rental assistance programs.

191. Defendants discriminated and retaliated against Plaintiff by denying him renewal of the Apartment Lease Contract on account of the source of funds allocated to assist him in paying rent and fees.

192. Defendants did not discriminate, retaliate, or otherwise, denied similarly situated White tenants, who are citizens of the United States, the right to renew the Apartment Lease Contract.

193. Defendants denied Plaintiff, a citizen of the United States, the equal right of leasing an apartment – a real estate property.

194. By doing so, Defendants intentionally and maliciously violated Plaintiff's rights to property as United States citizen.

195. As the proximate result of Defendants' discriminatory actions, Plaintiff has suffered a distinct and palpable injury.

---

[6] *Id.*

## COUNT VI
### Exclusion from and Intentional Discrimination in a Federal Program
### Title VI of the Civil Rights Act of 1964
### Violation of 42 U.S.C. § 2000d

196. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

197. RRP is a federal emergency rental assistance program that has been managed by DHCD. This emergency rental assistance program was enacted by the United States Congress pursuant to CARES and ARPA.

198. As shown by his 2019 tax return (pre-COVID 19), Plaintiff's individual income was in excess of $100,000.00.

199. However, as demonstrated by his 2020 and 2021 tax returns, his individual income sharply decreased (due to slow business activity) and, thus, Plaintiff became eligible and qualified for RRP.

200. Plaintiff participated in RRP by duly and timely submitting application No. 2286702.

201. Plaintiff participated in RRP by duly and timely submitting renewal application No. 2286702-2.

202. Defendants participated in RRP and received federal assistance.

203. As shown by DHCD's landlord application No.165499 activity log, Defendants submitted their application for federal assistance on January 27, 2022.

204. At all times relevant, Defendants have been aware that and/or have perceived Plaintiff as a non-White, Brown person.

205. As a result of their application No.165499, Defendants received $8,180.00 in federal assistance on May 7, 2022.

206. As authorized by 15 U.S.C. § 9058a(c), RRP was extended and a deadline for submitting initial or renewed applications for emergency assistance was set to May 15, 2022.

207. On May 11, 2022, Plaintiff timely submitted his RRP renewal application No. 2286702-2 for additional emergency assistance.

208. Although Defendants were timely informed of Plaintiff's pending RRP renewal application No. 2286702-2, they refused to cooperate with DHCD and submit documents in support of this new application.

19

209. However, Defendants submitted RRP applications and supporting documentation on behalf of similarly situated tenants of different protected classes.

210. By doing so, Defendants unlawfully excluded Plaintiff from participation in, denied him the benefits of, and subjected him to discrimination in RRP, which is a program that received federal funds by virtue of CARES and ARPA.

211. Defendants excluded and discriminated against Plaintiff on account of his race (non-Caucasian or non-White) and his color (Brown).

212. As the proximate result of Defendants' unlawful acts of exclusion and discrimination, Plaintiff has suffered a distinct and palpable injury.

**COUNT VII**
**Intentional Discrimination**
**Source of Funds**
**Violation of Va. Code § 36-96.3**

213. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

214. Defendants refused to cooperate with DHDC and submit, as required, documentation on behalf of Plaintiff.

215. In the absence of Defendants' mandatory cooperation, DHDC cannot allocate funds for rent payment.

216. In his September 13, 2022 email to Plaintiff, Defendants' counsel asserts that his clients are not required by law to participate in RRP.

217. In other terms, according to counsel's statement, Defendants, *at their discretion*, are entitled to reject funds originating from federal emergency rental assistance.

218. By refusing to cooperate with DHCD, Defendants refused funds originating from a federal emergency rental assistance program, i.e., RRP.

219. Once the source of the funds originate from a federal program enacted by a public law or regulation, Defendants are required to strictly abide by said public law or regulation in performing their contractual duties. Under the terms and conditions of the aforementioned Contract, Defendants are required to accept monthly payments of rent and fees, regardless of the source of the funds, as long as this source is lawful.

220. By directly or indirectly rejecting funds originating from RRP, Defendants denied assisted tenants, such as Plaintiff, the right to perform his contractual duties and pay rent and fees.

221. As supported by counsel's statements and the evidence released by DHCD to Plaintiff, Defendants *knowingly*, *willfully*, and *intelligently* rejected funds originating from RRP on behalf of Plaintiff.

222. Defendants intentionally discriminated against Plaintiff because the source of funds covering rent is federal assistance.

223. Moreover, Defendants intentionally discriminated against Plaintiff because they view him as a *non-White* assisted tenant who cannot perform his contractual duties.

224. As the proximate result of Defendants' discriminatory action, Plaintiff has suffered a distinct and palpable injury.

**COUNT VIII**
**Intentional Discrimination**
**Elderliness**
**Violation of Va. Code § 36-96.3**

225. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

226. At all times relevant to this controversy, Plaintiff was over 55 years old.

227. Defendants had knowledge that Plaintiff was over 55 years of age.

228. Defendants were aware that Plaintiff belongs to a vulnerable, protect class of tenants.

229. Defendants refused to exercise due diligence in order for Plaintiff to benefit from an emergency rental assistance program, i.e., RRP.

230. Defendants, without justification, refused to supply documentation in support of Plaintiff's RRP application No. 2286702-2.

231. Defendants afforded tenants under the age of 55 the opportunity to benefit from RRP and have their rents and fees paid through this program.

232. Between January 2022 and May 2022, Defendants supplied DHCD with documentation supporting younger (under 55) tenants' RRP initial or renewal applications.

233. By doing so, Defendants intentionally discriminated against Plaintiff in the terms, conditions, or privileges of rental of a dwelling.

234. As the proximate result of Defendants' discrimination on account of his age, Plaintiff has suffered a distinct and palpable injury.

**COUNT IX**
**Retaliatory Conduct**
**VRLTA**
**Violation of Va. Code § 55.1-1258**

235. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

236. Plaintiff complained to DHCD because of Defendants' refusal to cooperate and accept additional assistance funds that cover Plaintiff's rent.

237. Plaintiff complained to DHCD because of Defendants' unlawful discriminatory act.

238. Complaining to DHCD about being deprived by Defendants of participation in and enjoyment of the benefits of a federal program is a protected activity that is guaranteed by the Fair Housing Act and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

239. As evidenced by emails from Defendants and its counsel, they were all fully aware that Plaintiff was engaging in a protected activity.

240. Defendants were aware that any owed rent, which they have heretofore claimed, could have been paid through RRP.

241. Because of illegitimate considerations, Defendants refused to consider this option.

242. Defendants refused payment originating from RRP and, rather, initiated unlawful detainer actions.

243. On or about December 19, 2022, Plaintiff submitted a complaint alleging unlawful acts of discrimination and retaliation by Defendants to FHEO.

244. Pursuant to 42 U.S. Code § 3610(a)(1)(C), the FHEO Intake Branch Chief, Region III, forwarded Plaintiff's complaint to VFHO.

245. On December 27, 2022, Ms. Karen Taylor from VFHO contacted Plaintiff and informed him that his complaint is pending for review.

246. Defendants have knowledge that discrimination and retaliation complaints were submitted to both FHEO and VFHO.

247. In retaliation to Plaintiff's protected activity, Defendants issued on January 20, 2023 a Notice of Nonrenewal of Tenancy and Termination of Lease. They set the effective Termination Date for March 31, 2023.

248. This Notice violates the terms and conditions agreed upon in the Apartment Lease Contract, namely Clause No. 6 and Clause No. 34 relative to renewal.

249. On February 8, 2023, without serving upon Plaintiff a 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises, Defendants filed a third unlawful detainer action demanding rent payment.

250. Defendants' unlawful detainer actions and the surrounding nonsuit motions constitute an abusive and malicious course of action. They are not justified by acceptable business practices. Their motive is clearly of retaliatory nature against Plaintiff.

251. Considering Defendants' bad faith and their failure to exercise due diligence as to the resolution of the dispute on rent payment, Defendant's State actions do not have any other purpose but to maliciously evict Plaintiff. They constitute an adverse decision or an abusive course of action that could have been avoided.

252. Based on Defendants' propensity for litigiousness, which is now an established pattern, a causal connection therefore exists between Plaintiff's protected activity and Defendants' adverse action.

253. As the proximate result of Defendants' blind retaliatory measures, Plaintiff has suffered a distinct and palpable injury.

**COUNT X**
**Breach of Contract**

254. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

255. In good faith, Plaintiff entered with Defendants into the Apartment Lease Contract on February 25, 2019.

256. At all times relevant, Plaintiff performed his contractual duties within the meaning of the terms and conditions of the Apartment Lease Contract.

257. Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. *See* Restatement (Second) of Contracts § 205 (1981).

258. Defendants have not shown any good faith or fair dealing in the performance and enforcement of the Apartment Lease Contract.

259. Under the terms of this Contract, Plaintiff is required to make a monthly payment of rent and fees in exchange of occupying the premises disputed herein.

260. At all times relevant, Plaintiff fully performed his duty. Full performance of a duty under a contract discharges the duty. *See* Restatement (Second) of Contracts § 235 (1981).

261. Once the source of the funds originate from a federal program enacted by a public law or regulation, Defendants are required to strictly abide by said public law or regulation in performing their contractual duties.

262. Under the terms and conditions of the aforementioned Contract, Defendants are required to accept monthly payments of rent and fees, regardless of the source of the funds, as long as this source is lawful.

263. In the instant matter, Defendants refused to fully abide by the provisions of the Fair Housing Act, CARES, and ARPA.

264. Without justification, Defendants refused funds originating from a federal emergency rental assistance program and, thus, have one of their contractual duties performed.

265. Under the implied terms of the Contract[7], payment of rent and fees through funds originating from a federal assistance program is a legally enforceable obligation of Defendants to Plaintiff.

266. Defendants are patently in violation or breach of that obligation when they unjustifiably refuse to accept funds of that nature.

267. A failure, without justification, to perform all or any part of what is promised in a contract, is a breach thereof. *See* Restatement (First) of Contracts § 314 (1932).

268. Defendants failed to fully perform their contractual duties and strictly abide by provisions of federal law.

269. Defendants have heretofore falsely alleged that Plaintiff is in material noncompliance with the Contract for failure to pay rent. As demonstrated above, this is clearly a manufactured allegation that serves an illegitimate purpose.

270. This falsely alleged noncompliance is a discriminatory pretext to deny Plaintiff renewal of the Contract.

271. Plaintiff fully performed his duty when he informed Defendants that he was eligible and qualified for RRP.

272. Defendants showed bad faith and ill will in exercising due diligence and timely submitting documentation to a rent assistance program in which they were participating.

273. As shown by Defendant Grey's October 12, 2022 email to Plaintiff, Defendants failed to submit a timely RRP application to receive rent payment. When performance of a duty

---

[7] A contract is legal and enforceable when its terms, whether implied or express, do not violate the law.

under a contract is due any non-performance is a breach. *See* Restatement (Second) of Contracts § 235 (1981).

274. On February 25, 2019, upon entering into the Apartment Lease Contract with Defendants, Defendants misrepresented to Plaintiff that their property is quiet and that Plaintiff, as a tenant, will enjoy quiet and tranquility.

275. Based on this fraudulent misrepresentation, Plaintiff entered into said Contract with Defendants.

276. Plaintiff's manifestation of assent when he signed the Contract was induced by both a fraudulent and a material misrepresentation by Defendants upon which Plaintiff relied. *See* Restatement (Second) of Contracts § 164 (1981).

277. The Contract contains language to the effect that Plaintiff is entitled to the quiet enjoyment of and tranquility in his dwelling under the Contract's implied warranty.

278. Since February 25, 2019, Plaintiff has been subjected to false fire alarms on a recurrent basis on Defendants' premises.

279. On numerous occasions, those false alarms were set off late at night when Plaintiff was asleep.

280. Those false alarms were also set off during the wee hours, forcing Plaintiff and other tenants to rush out for their safety, sometimes under the rain.

281. Those alarms were set off several times within a period of 24 hours.

282. On all occasions, no fire was ever detected.

283. These repeated false alarms are a violation of the Loudoun County Codified Ordinance 654.02, which prohibits excessive sound in residential areas and dwellings.

284. This excessive, unwarranted, and noxious noise was reported by Plaintiff and other tenants to AVFRD.

285. AVFRD has kept records on Plaintiff's and other tenants' reports.

286. On many occasions, Plaintiff complained to Defendants about the false fire alarms. Defendants, however, ignored Plaintiff's complaints under the pretext that Plaintiff was in material noncompliance.

287. As the proximate result of the herein enumerated breaches, Plaintiff has sustained injury and substantial damages.

**COUNT XI**
**Breach of Implied Covenant of Good Faith and Fair Dealing**

288. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

289. Every contract, including the Apartment Lease Contract, contains an implied duty of good faith and fair dealing in the performance and enforcement of its terms and conditions.

290. At all times relevant to the events giving rise to this controversy, Defendants represented to Plaintiff that the Apartment Lease Contract was valid and enforceable.

291. This implied duty of good faith and fair dealing requires that neither party will do anything that will destroy or injure the right of the other party to receive the benefits of the contract.

292. Under Virginia law, although the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in that party.[8]

293. Plaintiff requested that Defendants cooperate with DHCD in order to perform his immediate, explicit duties under the Apartment Lease Contract, including rent payment.

294. Defendants refused to cooperate with DHCD and act in good faith to have rent paid through RRP.

295. By refusing to do so, Defendants dishonestly breach the implied covenant of good faith and fair dealing that governs their contractual relationship between landlord and tenant.

296. As alleged above, Defendants dishonestly breached the implied covenant of quiet enjoyment by failing to fix a defective alarm system.

297. Defendants' argument that the rent payment term of the Contract does not require them to cooperate with DHCD makes Clause No. 6, relative to rent payment, unenforceable.

298. Consequently, the whole Contract is unenforceable on grounds of public policy.

299. Because of the COVID-19 emergency, CARES and ARPA constitute public policy that mandates both Plaintiff's and Defendants' cooperation with DHCD to perform the rent payment term of the Contract.

300. "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly

---

[8] *See Stoney Glen, L.L.C. v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460 (E.D. Va. 2013), clarified on denial of reconsideration, No. 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013).

outweighed in the circumstances by a public policy against the enforcement of such terms." Restatement (Second) of Contracts § 178 (1981).

301. As the proximate result of Defendants' willful breach of the Implied Covenant, Plaintiff has suffered a distinct and palpable injury.

## COUNT XII
## Negligence

302. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

303. Defendants, ass RRP participant and recipients of federal assistance, failed to fulfill duties owed to Plaintiff under the Apartment Lease Contract.

304. In particular, Defendants failed to cooperate with DHDC and submit documentation in relation with Plaintiff's RRP renewal application No. 2286702-2.

305. Defendants breached their duty by refusing to cooperate with DHDC and submit documents relating to Plaintiff's RRP renewal application No. 2286702-2.

306. Defendants' breach of duty is the proximate cause of Plaintiff's RRP application being incomplete and, therefore, denied by DHDC.

307. Defendants' breach of duty caused Plaintiff injury and resulted in substantial damages.

## COUNT XIII
## Negligence Per Se

308. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

309. As alleged above, Defendants dishonestly breached the covenant of quiet enjoyment by failing to fix a defective alarm system. As stated above, this did not cause a minor inconvenience only, but it was a pattern that lasted for a long period of time and was clearly a violation of the Loudoun County Codified Ordinance 654.02. This ordinance prohibits excessive sound in residential areas and dwellings.

310. Defendants' violation of Loudoun County Codified Ordinance 654.02 caused him insomnia, fear, anxiety, emotional distress, fatigue, episodes of depression, and a lack of focus at work and school.

311. This perturbation interfered with Plaintiff's productivity.

312. In bad faith, Defendants refused to enforce the non-smoking clauses of the Apartment Lease Contract despite Plaintiff's repeated verbal and written complaints.

313. Repeatedly, Plaintiff complained that some residents and neighbors smoke tobacco and marijuana inside the building.

314. As the proximate result of this breach, Plaintiff has suffered respiratory disorders and complications from secondhand smoke.

315. Secondhand smoke also comes from neighboring apartments through the ventilation system.

316. To this day, Defendants did not take any action regarding tenants who smoke in those prohibited areas of the property.

317. In February 2019 and thereafter, Plaintiff has been complaining to Defendants, verbally and in writing, of the existence of mold in his apartment. Defendants ignored his repeated complaints.

318. Defendants did not disclose the presence of mold in Plaintiff's apartment when he moved in on February 25, 2019.

319. Pursuant to Va. Code § 55.1-1215, Defendants are required to disclose the presence of mold.

320. Pursuant to Va. Code Va. Code § 55.1-1214, Defendants are required, within 5 days from the beginning of Plaintiff's tenancy, to provide him with a report where they must disclose whether there is any visible evidence of mold in areas readily accessible within the interior of the dwelling unit.

321. Defendants failed to make a timely disclosure.

322. To this day, Defendants have not remediated the mold condition, as required by Va. Code § 55.1-1215.

323. Curiously, on December 9, 2022, the same day they were granted the second nonsuit by the Loudoun County General District Court, Defendant Grey suddenly requested that Plaintiff acknowledge receipt of the Virginia Statement of Tenant Rights and Responsibilities under the VRLTA (as of July 1, 2022). In this Statement, Plaintiff is informed that he "must promptly notify the landlord of visible mold and use reasonable efforts to prevent moisture and mold."

324. Defendants provided Plaintiff with said Statement after the facts, i.e., their failure to remediate the mold condition. In other terms, this Statement was only given to Plaintiff after Defendants failed to comply with the warranty of habitability and the Virginia Uniform Statewide Building Code.

325. Because Plaintiff violated the statutes relative to the disclosure and remediation of mold, along with its refusal to enforce the non-smoking clause, Plaintiff has been suffering from respiratory difficulties and disorders. Specifically, as the result of mold growth, Plaintiff developed an allergy that is manifested by heavy sneezing, runny and stuffy nose, coughing and postnasal drip, itchy eyes, nose and throat, watery eyes in the morning, and dry, scaly skin.

326. This allergy interferes with Plaintiff's current job as a limousine driver. Customers have complained about the symptoms of his allergy to mold.

327. In light of these allegations, it is undisputed that Defendant violated the statutes and ordinances enacted for public safety.

328. The making, creation or maintenance of certain audible and discernable sounds are hazardous to the public health, welfare, peace and safety, as well as the quality of life of the citizens of Loudoun County.

329. The aforementioned statutes were enacted to provide Plaintiff and other citizens with an environment free from the type of health hazards, such as mold and secondhand smoking, that may jeopardize public health, welfare, peace and safety, or degrade the quality of life.

330. Plaintiff is a citizen of Loudoun County, Virginia, and belongs to the class of persons for whose benefit the statutes were enacted.

331. The harm that occurred was of the type against which the statute was designed to protect.

332. Defendants' statutory violations constitute a proximate cause of Plaintiff's injury.

333. These violations are the result of Defendants' the failure to exercise that standard of care prescribed by the legislative bodies of both Virginia and Loudoun County.

334. There is negligence per se because injury did not occur from other causes created by conditions emanating from Defendants' statutory violations.

335. These statutory violations are the proximate cause of Plaintiff's mental and physical injuries.

**COUNT XIV**
**Fraud**

336. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

337. Despite the fact that Plaintiff has secured renter's insurance since February 25, 2019, Defendants fraudulently represented that Plaintiff must pay an additional monthly premium for insurance. *See* Va. Code § 55.1-1206.

338. As a Virginia renter, Plaintiff's insurance policy covers both his personal property and personal liability for any occurrence within Defendants' premises. The policy covers personal property for up to $10,000.00 less a deductible of $500.00. Moreover, this policy covers personal liability for up to $100,000.00 per occurrence. Furthermore, it covers medical expenses for up to $1,000.00 per person and for any loss amount to $2,000.00 per occurrence.

339. Plaintiff's vehicle is covered by a separate commercial insurance policy for up to $1,000.000.00 per occurrence.

340. In violation of Va. Code § 55.1-1206 (A), Defendants did not notify Plaintiff in writing that Plaintiff has the right to obtain his own insurance policy.

341. In accordance with Va. Code § 55.1-1206 (A), Plaintiff, on February 25, 2019, elected to obtain his own policy and submitted to Defendants written proof of coverage by Assurant[9]. Since then, Plaintiff has maintained such a coverage, at all times, during the terms of his successive rental agreements with Defendants.

342. As shown by itemized billing invoices and the Apartment Lease Contract, Defendants have been fraudulently charging Plaintiff a monthly $20.00 for a so-called "master insurance" policy.

343. Defendants' Apartment Lease Contract uses misleading and ambiguous language, such as "You are required" to induce tenants into opting in Defendants' so-called "master insurance policy", notwithstanding their decision to purchase their own insurance coverage.

344. Specifically, the Contract uses deceptive language inducing tenants into checking boxes. Checking these boxes will justify Defendants' fraudulent charge of a monthly premium:

> Additionally, you are *[check one]* ☐ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance throughout your tenancy, including any renewal periods and/or lease extensions, is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

345. Defendants are fully aware that Plaintiff has kept the required renter's insurance policy active since February 25, 2019.

346. Defendants intentionally charged Plaintiff a policy premium to which the Contract, along with the monthly billing invoices, refer as the "master insurance" premium.

---

[9] https://www.assurant.com.

347. The use of deceptive and ambiguous language shows that Defendants have a culpable state of mind.

348. There is a conscious discrepancy between Defendants' misrepresentation on the Contract and the awareness of Plaintiff's right to purchase his own renter's insurance policy, as required by Va. Code § 55.1-1206.

349. As a matter of law, "[a] representation that the maker knows to be capable of two interpretations, one of which he knows to be false and the other true is fraudulent if it is made: (a) with the intention that it be understood in the sense in which it is false, or (b) without any belief or expectation as to how it will be understood, or (c) with reckless indifference as to how it will be understood." Restatement (Second) of Torts § 527 (1977).

350. Defendants' ambiguous representation shows an intent to mislead.

351. Plaintiff has reasonably relied on Defendants' ambiguous representation to the effect that he is required to purchase the so-called "master insurance" policy in order for him to be in full compliance with the terms and conditions of his tenancy.

352. Plaintiff has been misled, months during, into paying the "master insurance" premium.

353. Plaintiff's reliance upon Defendants' fraudulent misrepresentation is justifiable because the matter misrepresented is material.

354. By engaging in the above-described act of misrepresentation, Defendants had reason to know that Plaintiff would regard the induced purchase of additional insurance, i.e., "master insurance", as important in determining his choice of action, although a reasonable man would not so regard it. *See* Restatement (Second) of Torts § 538 (1977).

355. In violation of Va. Code § 18.2-178, Defendants obtained from Plaintiff, by false pretense and/or token, his signature to a writing, i.e., Apartment Lease Contract, with the intent to defraud him of money.

356. Clearly, Defendants committed a criminal act and/or practice as defined in Va. Code § 18.2-178. Specifically, this criminal act and/or practice involves insurance as defined by Va. Code §§ 38.2-117 (personal injury liability) and 38.2-118 (property damages liability).

357. Therefore, Defendants committed insurance fraud as defined by Va. Code § 52-36.

358. One who fraudulently makes a material misrepresentation of fact, opinion, intention, or law, for the purpose of inducing another to act or refrain from acting, is subject to liability for economic loss caused by the other's justifiable reliance on the misrepresentation. *See* Restatement (Third) of Torts: Liab. for Econ. Harm § 9 (2020).

31

359. In short, Defendants made (1) a false representation (2) of a present, material fact, (3) intentionally and knowingly, (4) with intent to mislead, (5) Plaintiff reasonably relied on Defendants' misrepresentation to enter/renew the Apartment Lease Contract, and (6) this reasonable reliance on Defendants' false representation resulted in damages.

360. As the proximate result of Defendants' fraudulent actions, Plaintiff has suffered a distinct and palpable injury.

**COUNT XV**
**Prohibited Practices Under the Virginia Consumer Protection Act**
**Violation of Va. Code § 59.1-200**

361. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

362. Clause No. 39 of the Apartment Lease Contract No. 39 prohibits Plaintiff from having any dispute with Defendants decided by jury trial:

> **WAIVER OF JURY TRIAL.** To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

363. As a matter of law, this clause is void and unenforceable. It denies Plaintiff a right that has been established, guaranteed, and protected by the Seventh Amendment to the United States Constitution. Moreover, it denies Plaintiff the right to assert claims and/or counterclaims under the Fair Housing Act. Furthermore, it precludes Plaintiff from asserting defenses which are otherwise asserted before federal courts.

364. Under the Virginia Consumer Protection Act, this practice is also prohibited. Va. Code § 59.1-200(A)(13) proscribes Defendants from:

> Using in *any contract or lease* any liquidated damage clause, penalty clause, or *waiver of defense,* or attempting to collect any liquidated damages or penalties under any clause, *waiver,* damages, or penalties that are void or unenforceable under any otherwise applicable laws of the Commonwealth, or under federal statutes or regulations (emphasis added).

365. Obviously, Clause No. 39 is in contravention with Va. Code § 55.1-1228(A)(5). It is adopted by Defendants for the purpose of evading its obligations under the VRLTA(§ 55.1-1200 et seq.) and the Fair Housing Act.

366. As alleged above, Defendants engaged in unfair and deceptive practices as to insurance. *See* Clause No. 8 and Lease Addendum for Requirement of Renter's Liability Insurance.

367. This consumer transaction between Plaintiff and Defendants, which is subject to the VRLTA (§ 55.1-1200 et seq.), is not excluded by Va. Code § 59.1-199(E). It is an act or practice by Defendants which constitutes a misrepresentation or fraudulent act or practice under § 59.1-200.

368. Under the Virginia Consumer Protection Act, unfair and deceptive practices related to insurance are prohibited by Va. Code § 59.1-200(A)(14). This statute prohibits Defendants from

> Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

369. Defendants' prohibited practices are the proximate cause to damages sustained by Plaintiff.

370. Pursuant to Va. Code § 59.1-204, Plaintiff has the right to assert a cause of action under the Virginia Consumer Protection Act.

371. Plaintiff did not receive any cure offer under this Act.

372. Plaintiff did not bring any other action in any other jurisdiction under the same allegations of fact under the same.

373. Defendants' unlawful acts are willful and have resulted in distinct and palpable injuries. Therefore, Plaintiff is entitled to recover three times the amount of the actual damages he has sustained.

## COUNT XVI
### Unjust Enrichment

374. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

375. By paying the "master insurance" premium every month, Plaintiff conferred a benefit upon Defendants.

376. By being induced to pay a monthly premium to Defendants, Plaintiff had a reasonable expectation rent was being paid.

377. Defendants have known of both the benefit conferred and the expectation of payment.

378. Defendants have known that Plaintiff was covered by his own insurance policy and, thus, in compliance with the terms and conditions of tenancy. Nevertheless, Defendants continued to rack up a record payment amount of monthly premiums since February 25, 2019.

379. Defendants have been unjustly enriching themselves at the expense of Plaintiff.

380. Defendants have accepted or retained the benefit conferred upon them by Plaintiff without offering any service for its value.

381. It is clearly inequitable for Defendants to retain the benefit without paying fair value for it.

382. Under the quasi-contract theory, Defendants are liable to Plaintiff for restitution.

**COUNT XVII**
**Abuse of Process**

383. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

384. Defendants participated in RRP and had knowledge that payment of owed rent and fees was guaranteed.

385. Plaintiff informed Defendants that, based on his income and RRP requirements, he was eligible and qualified for emergency rental assistance.

386. While Plaintiff's RRP application No. 2286702 was pending with DHCD, Defendants filed their first unlawful detainer action with the Loudoun County General District Court on April 13, 2022.

387. Not only did they unlawfully file this action, but they also demanded payment of late fees in violation of 15 U.S.C. § 9058(b).

388. In overt acts of harassment and in violation of 15 U.S.C. § 9058(c), Defendants served Plaintiff with multiple notices to vacate.

389. Defendants also initiated unlawful detainer actions in violation of the Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID–19, an order by the Centers for Disease Control and Prevention (CDC), which was published in the Federal Register. *See* 85 FR 55292 and 86 FR 16731.

390. On May 7, 2022, Defendants received from DHCD on behalf of Plaintiff a payment of $8,180.00 to cover rent arrears and fees.

391. On May 11, 2022, Plaintiff informed Defendants that he timely applied for additional emergency rental assistance. Again, Plaintiff informed Defendants that, based on his income and RRP requirements, he was eligible and qualified for additional emergency rental assistance. In addition, Defendants were aware that Plaintiff did not exceed the statutory limitations mandated by 15 U.S.C. § 9058a(c).

392. Upon receiving federal assistance funds through RRP, Defendants filed a nonsuit motion, which was granted by the Loudoun County General District Court on May 25, 2022.

393. Instead of submitting documentation to support Plaintiff RRP renewal application No. 2286702-2, Defendants unlawfully initiated eviction proceedings. However, they submitted RRP applications for similarly situated White tenants.

394. Intentionally discriminating against Plaintiff and, thus, excluding him from participating in a federal emergency rental assistance program, Defendants improperly and unlawfully used legal process to evict Plaintiff and rent the apartment occupied by Plaintiff for a higher price.

395. Defendants' abuse of legal process was motivated by greed and racial animus.

396. Defendants' abuse of legal process was motivated by their belief that Plaintiff would be intimidated and, thus, abandon the premises.

397. Defendants' abuse of legal process was motivated by a clear intent to harm Plaintiff.

398. Defendants did not exercise due diligence in seeking the less costly, alternative means to collect unpaid rent.

399. Considering their violations of CARES and ARPA, Defendants are unable to ascertain the amount of rent allegedly owed by Plaintiff. In his September 13, 2022, counsel for Defendants admits on behalf of his clients that the claimed amount is incorrect. However, to this day, nothing was done to correct it.

400. Plaintiff legitimately dispute the incorrect amount that has been claimed by Defendants.

401. In vain, Plaintiff tried to contact counsel for Defendants in order to resolve the instant matter through DHCD. However, counsel did not return Plaintiff's calls. Instead, he filed a second unlawful detainer action and threatened "full redemption" in his September 13, 2022 email.

402. In the same email, he stated to Plaintiff: "As you are aware, Virginia law no longer requires landlords to apply or pursue rental assistance on behalf of their tenants in order to initiate or pursue legal action to gain possession of their leased premises due to nonpayment."

403. Counsel's statement contradicts DHCD's published directives concerning Tenants' Rights after January 1, 2021.[10]

---

[10] https://www.dhcd.virginia.gov/sites/default/files/docx/landlord-tenant/tenant-after.pdf.

404. Defendants' litigious behavior constitutes a pattern. As evidenced by an email exchange dated May 11, 2022, between Defendant Parades and Plaintiff, Defendant Parades threatened "further legal action" against Plaintiff.

405. The word "further" in Defendant Parades's email speaks of Defendants' intent to initiate legal action against Plaintiff regardless of his willingness to perform his contractual duty of paying rent.

406. It is patently clear that Defendants are using legal process for the ulterior motive or improper purpose of evicting Plaintiff, despite the latter's willingness and ability to pay owed rent and fees.

407. This is clearly demonstrated by the pattern of initiating unlawful detainer actions and nonsuiting them. Nonsuits support the fact that Defendants' allegations of nonpayment are false, malicious, and defamatory.

408. The pattern of threats and litigious conduct is evidence of abuse of process. On its face, the egregious nature of this behavior unveils Defendants' intent to harm Plaintiff and make him homeless.

409. To add insult to injury, on February 8, 2023, without serving upon Plaintiff a 5-Day Notice to Pay Rent or, Alternatively, to Terminate Lease and Vacate Premises, Defendants filed a third unlawful detainer action demanding rent payment.

410. Proper 5-Day Notice must be served upon Plaintiff because Defendants nonsuited two unlawful detainer actions before filing the third one.

411. To support their third unlawful detainer action, counsel for Defendants submitted a perjurious affidavit, executed by Defendant Grey, to mislead the State court on the maximum jurisdictional limits and have it exercise a jurisdiction that is lacking. *See* Va. Code § 16.1-77.

412. One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process. *See* Restatement (Second) of Torts § 682 (1977).

413. Defendants are liable to Plaintiff for injury and damages sustained as the proximate result of their abuse of legal process.

## COUNT XVIII
### Defamation

414. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

415. By bringing the false and malicious allegations that Plaintiff failed to pay rent, Defendants caused the publication of records concerning Plaintiff.

416. These published records, whether Internet court records or non-court records, which are now available to the general public, contain false and malicious allegations.

417. Defendants knew that their allegations are false.

418. Defendants brought these allegations to threaten and defame Plaintiff. As a matter of fact, the first two unlawful detainer actions were nonsuited. The third one will be dismissed for lack of jurisdiction.

419. Defendants knew that Plaintiff never refused or failed to pay rent.

420. Defendants knew that, absent their cooperation with DHCD, Plaintiff would not be responsible or liable to them for any rent or fees prior to October 14, 2022, that is the date where all RRP funds were exhausted.[11]

421. Defendant Grey knew that Plaintiff was subject to a Single Scope Background Investigation for the purpose of determining his suitability for a National Security employment position. Upon information and belief, she was contacted and interviewed by OPM investigators. Therefore, she knew that Defendants' false and defamatory allegations will depict Plaintiff as an irresponsible individual and, hence, render him unsuitable for said position.

422. In other terms, Defendant Grey and, by extension, all other Defendants knew that their actionable statements would prejudice Plaintiff and defame his character in his quest for said position.

423. One of the major factors that determine the favorable adjudication of a Government security clearance is Guideline F, pertaining to financial responsibility. *See* 32 CFR § 147.8 (Guideline F – Financial considerations).

424. In addition, Defendants knew that their false allegations would make it difficult for Plaintiff to seek and obtain housing. Landlords, like Defendants themselves, check court records and credit histories before making any final decision regarding a rental application. *See* 15 U.S.C. § 1681a(k).

---

[11] https://www.dhcd.virginia.gov/rmrp.

37

425. Although they were aware that Plaintiff was eligible for rental emergency relief, under RRP, and that this program, along with CARES and ARPA, prohibit landlords from filing unlawful detainer actions and charging late fees, Defendants, nevertheless, maliciously filed the aforementioned State actions. 15 U.S.C. §§ 9058, 9058a, and 9058c.

426. Defendants knew that Plaintiff diligently requested their cooperation to perform his duties under the Lease Agreement Contract, including payment of rent.

427. Defendants ignored Plaintiff's multiple requests to cooperate with DHDC. Instead, as manifested by Defendant Parades's threats of legal action, their actions have heretofore articulated the requisite intent for defamation.

428. The false and malicious allegations made by Defendants are defamatory and actionable per se.

429. As the proximate result of Defendants' defamatory statements, Plaintiff has been severely and irremediably injured. Specifically, the defamatory published records will be investigated by the Government, will delay adjudication, and need be mitigated. Moreover, those published records – unless expunged, which necessitate a long period of time – will continue to prevent Plaintiff from securing suitable housing.

## COUNT XIX
### Defamation Per Se

430. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

431. As demonstrated above, defamation occurred because (1) Defendants published or caused to be published (2) actionable statements, consisting of maliciously false and defamatory allegations (3) against Plaintiff with (4) the requisite intent to defame his character.

432. Defendants' defamatory statements and/or allegations are actionable per se.

433. Defamatory statements or words are actionable per se when (a) they "impute to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment."[12]

434. They are also actionable per se when they "prejudice such person in his or her profession or trade."[13]

---

[12] *See, e.g., Fleming v. Moore*, 221 Va. 884, 889, 275 S.E.2d 632, 635 (1981).

[13] *Id.*

435. "All other defamatory words which, though not in themselves actionable, occasion a person special damages are actionable."[14]

436. Defendants' defamatory allegations contain an imputation that is necessarily hurtful in its effect on Plaintiff's current business and must necessarily affect his suitability for National Security employment.

437. In other words, there is a "nexus between the content of the defamatory statement and the skills or character required to carry out the particular occupation of the plaintiff."[15]

438. Specifically, as alleged above, there is a nexus between the content of Defendants' defamatory statement and the requirements set forth in 32 CFR § 147.8 (Guideline F – Financial considerations).

439. 32 CFR §§ 147.8(b)(1) and (3) are grounds for the Government to deny security clearance for a candidate. Defendants' false and defamatory allegations of Plaintiff's history of not meeting financial obligations and the inability or unwillingness to satisfy debts are the proximate cause of injury and financial loss.

440. Because Defendants' defamatory allegations are recent, conditions that could mitigate any security concerns will be time-consuming and strenuous for Plaintiff.

441. Plaintiff's injury consists of defaming his character and suitability for employment.

442. His loss is quantifiable in a yearly compensation that amounts to $150,000.00/year, exclusive of bonuses and other perks and benefits.

## COUNT XX
## Intentional Infliction of Emotional Distress

443. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

444. Defendants' refusal to cooperate with DHCD caused Plaintiff's RRP renewal application to be denied.

445. By unlawfully excluding and discriminating against Plaintiff as to his participation in a federal emergency rental assistance program, Defendants have maliciously exposed Plaintiff to eviction.

446. Be it reckless or intentional, Defendants' conduct is egregious.

---

[14] *Id.*

[15] *Id.* at 890.

447. By engaging in such a conduct, Defendants were motivated by racial animus and the desire to retaliate against Plaintiff for openly asserting his housing rights.

448. Defendants have been engaging in such a pattern of reprehensible acts despite their knowledge that Plaintiff is 57 years old – a very advanced age to be in a homeless shelter – and that eviction will ultimately lead to homelessness.

449. In fact, Defendants' motive, as translated by its calculated decisions, is to harass Plaintiff and make him homeless – not to collect rent. This is further demonstrated by its decisions to nonsuit its unlawful detainer actions.

450. During the COVID-19 crisis, Defendants were offered by Plaintiff a myriad of solutions and compromises to resolve the present dispute. Defendants refused and resorted to the legal process.

451. Plaintiff, as supported by medical reports from New York healthcare professionals, was traumatized by an episode of homelessness in his life. Plaintiff's homelessness was caused by former landlords' unlawful acts of abuse, harassment, discrimination, and retaliation – acts which are closely similar to Defendants'. Records show that federal courts ruled in Plaintiff's favor to redress those abuses.

452. As the proximate result of Defendants' egregious conduct, Plaintiff is now suffering from emotional distress and seeking therapy by licensed healthcare professionals in Virginia.

453. Unwarranted legal action by Defendants and their counsel have no other purpose but to coerce Plaintiff into abandoning the premises for good. Once vacant, Defendants will rent the apartment for a higher price.

454. This is evidenced by the Notice of Nonrenewal of Tenancy and Termination of Lease, issued and signed by Defendant Kathleen Grey on January 20, 2023,

455. These acts have been calculated to intimidate Plaintiff and cause him tremendous fear and trauma.

456. Defendants' conduct is extreme, outrageous, and intolerable.

457. Undeniably, there is a causal connection between Defendant's egregious conduct and Plaintiff's resulting emotional distress.

458. The resulting emotional distress is severe.

459. As the proximate result of Defendants' egregious acts, Plaintiff has suffered severe injury.

## VIII.    DEMAND FOR JURY TRIAL

460. Plaintiff demands a trial by jury as to each and every triable issue.

## IX.    PRAYER FOR RELIEF

461. As stated above, damages in this controversy exceed the statutory sum or value of $75,000.00, exclusive of interest and costs, and need to be ascertained. **WHEREFORE,** Plaintiff respectfully requests that the Court:

    (a)    Based on Defendants' breaches, misrepresentations, and frauds, Declare the Apartment Lease Contract void, voidable, and unenforceable.

    (b)    Order restitution of all monies paid to Defendants by Plaintiff counting from the day Plaintiff entered into said Contract with Defendants up to the closure of the present matter;

    (c)    Order injunctive relief;

    (d)    Award compensatory damages;

    (e)    Award punitive damages;

    (f)    Award incidental, liquidated, reliance, and consequential damages as the result of Defendants' breach of contract;

    (g)    Expert fees pursuant to 42 U.S.C. § 1988(c);

    (h)    Award court costs; and

    (i)    Grant any and all further relief this Court deems just and proper.

Respectfully submitted on February 21, 2023

Andrew A. Aquila, *pro se*
19800 Cornerstone Square, Apt. 304
Ashburn, VA 20147

Telephone: (202) 812-2070
Email: andrew.a.aquila@icloud.com