IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| ANDREW A. AQUILA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 1:22-cv-1421 |
| SREIT BROAD VISTA TERRACE LLC, | ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Summary Judgment.

Plaintiff Andrew A. Aquila was a tenant at the Acadia Apartments complex, which is owned by Defendant SREIT Broad Vista Terrace LLC. Plaintiff's most recent lease term was from July 19, 2021 to January 18, 2023. Throughout this lease term, Plaintiff failed to pay rent himself, but he did receive rental assistance from the Virginia Rent Relief Program (VRRP). Through the VRRP, which was administered by the Virginia Department of Housing and Community Development (DHCD), a tenant may apply for rent arrears back to April 1, 2020 and up to three months of payments into the future. The total payments from VRRP could not exceed fifteen months of rent assistance per household. The application required both the tenant and landlord to supply certain information to DHCD

1

before DHCD could approve the application for VRRP assistance. On three separate occasions, Plaintiff applied for rent relief, Defendant supplied the necessary information to DHCD, and DHCD approved the application for VRRP. Defendant received money from the VRRP on behalf of Plaintiff in April 2021, November 2021, and May 2022.

On the same day the last payment was made by VRRP, May 11, 2022, Plaintiff filed a new tenant VRRP application. Defendant contends that it never received notice from DHCD about this VRRP application, and it never appeared in Defendant's online VRRP Landlord Portal. After Defendant received the May 2022 VRRP payment, Plaintiff had a remaining balance of $3,418.17 owed to Defendant. Following the May 2022 payment, Defendant did not receive any further rent payment from Plaintiff or on behalf of Plaintiff.

On July 7, 2022, Defendant issued a Notice to Pay Rent or Quit, which reflected that Plaintiff owed $8,029.97 to Defendant in rent and related charges. On October 4, 2022, based on that Notice to Pay Rent or Quit, Defendant filed an unlawful detainer action in Loudoun County General District Court. The unlawful detainer action was later nonsuited by Defendant due to its failure to serve Plaintiff with the Tenants Rights and Responsibilities notice.

2

On October 12, 2022, Kathleen Grey, an employee of Defendant, contacted VRRP about Plaintiff's application. Ms. Grey asserts that she was told that nothing was required from Defendant because Plaintiff needed to provide additional information to complete his portion of the application. After Defendant informed Plaintiff of this communication, Plaintiff resubmitted his VRRP application on October 14, 2022. However, as of that date, VRRP had exhausted all of its funding.

Plaintiff claims that before a hearing on the first unlawful detainer action on December 9, 2022, he overheard counsel and an employee of Defendant use racial slurs to describe Plaintiff. Plaintiff filed a discrimination complaint against Defendant with the U.S. Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity (FHEO) on December 19, 2022.

Defendant served Plaintiff with a Notice of Nonrenewal of Tenancy and Termination of Lease on January 20, 2023. After properly serving Plaintiff with the Tenants Rights and Responsibilities notice, Defendant refiled its unlawful detainer action on February 8, 2023 with the Loudoun County General District Court. On March 1, 2023, the Loudoun County General District Court granted Defendant possession of the unit against Plaintiff. On March 6, 2023, Plaintiff removed the unlawful detainer proceeding to this Court. On April 21, 2023, the Court remanded the case back to the Loudoun County General District Court for lack of subject

matter jurisdiction. Plaintiff was evicted from the unit on May 25, 2023. On September 12, 2023, the Loudoun County General District Court awarded Defendant a judgment of $31,797.63, plus $74.00 in costs, $7,949.00 in attorneys' fees, and interest. Plaintiff removed the proceeding to this Court shortly after the judgment was issued, but it was again remanded due to lack of subject matter jurisdiction. Plaintiff did not appeal the judgment.

In the instant case, Plaintiff filed the Complaint against Defendant and others on December 13, 2022. Plaintiff then filed the Amended Complaint on February 21, 2023. Following Defendant's Motion to Dismiss, the Court dismissed all other defendants and narrowed the claims to just those for intentional discrimination in violation of 42 U.S.C. § 1981, retaliation in violation of 42 U.S.C. § 1981, intentional discrimination in violation of 42 U.S.C. § 3604(b), and breach of contract. Through these remaining claims, Plaintiff alleges that Defendant discriminated against him due to his race and color, retaliated against him for complaining about Defendant to FHEO, and breached the lease agreement.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In

4

reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

Central to the intentional discrimination and breach of contract claims is the lack of information provided by Defendant to DHCD in support of Plaintiff's May 11, 2022 VRRP application for rental relief ("May 2022 VRRP application"). Plaintiff argues that because Defendant failed to provide any information, he was not approved for another round of VRRP assistance, which resulted in Plaintiff failing to pay rent after May 11, 2022. In support, Plaintiff provides documentation that shows he submitted his VRRP application on May 11, 2022, the tenant application was accepted by DHCD on June 17, 2022, and he resubmitted the application on October 14, 2022. The form states that the next step was to have the landlord complete their portion of the application.

Defendant claims that DHCD never requested Defendant provide the materials. To support this assertion, Defendant furnishes a declaration from Paul Ahls, the corporate designee and record keeper of Defendant. That declaration states that documentation

5

and information was previously requested from Defendant by DHCD for Plaintiff's three prior VRRP applications through Defendant's VRRP Landlord Portal, but Defendant never received notice of the May 2022 VRRP application from DHCD, and the request for documentation and information never appeared in Defendant's VRRP Landlord Portal.

Defendant also supported this assertion by providing two emails. The first was sent by Plaintiff to Ms. Grey, dated August 27, 2022, that indicated a different employee of Defendant searched Defendant's VRRP Landlord Portal for any indication or notice of Plaintiff's May 2022 VRRP application, and the employee was not able to find anything in the portal concerning the application. The second was from Ms. Grey to Plaintiff, dated October 12, 2022, stating that she had spoken with a VRRP representative, and the representative confirmed there was nothing Defendant needed to complete at that time regarding Plaintiff's VRRP application. Instead, Plaintiff resubmitted his VRRP application on October 14, 2022.

When a plaintiff is unable to produce any evidence supporting its allegations, there is no issue of material fact with respect to those allegations. See Bond Distrib. Co. v. Carling Brewing Co., 325 F.2d 158, 159 (4th Cir. 1963). Here, Defendant has produced ample evidence to indicate that it never received a request from VRRP to provide documentation and information to

6

support Plaintiff's May 2022 VRRP application. On the other hand, Plaintiff has not put forth any evidence to support his allegations that Defendant did receive the request to provide information and chose not to comply with the request. The form stating that the next step of the VRRP application process was to have the landlord complete their portion of the application is not sufficient to show that Defendant ever received notice or a request for information from DHCD. Therefore, there is no issue of material fact with respect to Defendant never having received a request from DHCD to provide information supporting the May 2022 VRRP application.

To prevail on a discrimination claim under § 1981, the plaintiff bears the burden of showing that race and color were but-for causes of his injury. Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1014-15 (2020). It is not sufficient to only show that race and color played some role in the defendant's decision-making process. Jones v. Lowe's Companies, Inc., 845 F. App'x 205, 215 (4th Cir. 2021) (quoting Comcast, 140 S. Ct. at 1013). In support of his claim, Plaintiff has provided a declaration describing racial slurs he overheard from Defendant's counsel and employee, as well as information about the other tenants who applied for VRRP assistance. However, neither satisfies Plaintiff's burden of proof. Defendant had previously, on three separate occasions, provided information and

7

documentation to DHCD in support of Plaintiff's other VRRP applications. If race and color were but-for causes of Defendant failing to provide DHCD with the necessary materials for the May 2022 VRRP application, Plaintiff does not explain why Defendant would have provided the materials for the prior three applications. Even more importantly, Defendant has a legitimate, non-discriminatory reason for not supplying the landlord application materials in support of Plaintiff's application—it never received a request to provide those materials from DHCD. As Plaintiff has not met the high burden of proving that race and color were but-for causes of his injury, the § 1981 discrimination claim must be dismissed.

As for the intentional discrimination claim under the Fair Housing Act, several courts have determined that the but-for standard used in Comcast does not extend to Fair Housing Act discrimination claims. See Gilead Comm. Servs., Inc. v. Town of Cromwell, 604 F. Supp. 3d 1, 16-17 (D. Conn. 2022). Instead, under the Fair Housing Act, a plaintiff may bring either a disparate-treatment claim, where a plaintiff must establish that the defendant had a discriminatory intent or motive, and/or a disparate-impact claim, which challenges practices that have a disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale. Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc., 576 U.S. 519, 524

8

(2015) (quoting Ricci v. DeStefano, 557 U.S. 557, 577 (2009)). Plaintiff brings his claim for racial discrimination only under the disparate-treatment theory.

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), the three steps for establishing a discrimination claim are: (1) a plaintiff must first prove a prima facie case of discrimination by preponderance of the evidence; (2) a defendant then has the opportunity to present a legitimate, non-discriminatory reason for the action; and (3) if defendant presents a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must proffer evidence that the legitimate, non-discriminatory reason proffered was merely a pretext for discrimination. See Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1451 (4th Cir. 1990) (applying the McDonnell Douglas framework to fair housing claims). As noted above, Defendant provides a legitimate, non-discriminatory reason for not providing the landlord materials in support of Plaintiff's May 2022 VRRP application, which is that Defendant never received a request to provide those materials. In fact, Defendant was told that there was nothing that it needed to submit after proactively calling DHCD to check on whether information was needed for Plaintiff's application. Conversely, Plaintiff does not proffer evidence sufficient to carry his burden of proving that this reason for not providing the materials to DHCD was merely pretext. Even taking

9

the accusation of the use of racial slurs by Defendant's counsel and employee as true, it does not overcome the fact that Defendant never received a request for information from DHCD. Accordingly, the discrimination claim under the Fair Housing Act must be dismissed.

Plaintiff further asserts that Defendant breached the lease agreement by failing to provide materials to DHCD in support of Plaintiff's May 2022 VRRP application. Plaintiff points to a provision in the lease agreement that requires Defendant to comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing. Plaintiff cites the Act that created VRRP, which states that "[i]f the tenant has applied for rental assistance, the landlord shall cooperate with the tenant's application, by providing all information and documentation required to complete the application . . . ." 2021 Va. Acts Special Session II Chapter 1 § 16(a)(2). However, as evidenced by the lack of request for information from DHCD both in Defendant's VRRP Landlord Portal and during Defendant's call to VRRP, information and documentation was not required by DHCD from Defendant to complete Plaintiff's May 2022 VRRP application. Accordingly, Defendant was not in violation of the state law. Furthermore, Plaintiff has not been able to provide any other fair housing laws that Defendant violated.

10

Plaintiff also claims that Defendant breached the lease agreement by failing to accept Plaintiff's offer to pay all unpaid rent to Defendant through the Loudoun County General District Court. As the Virginia Supreme Court has instructed, the first party to materially breach the contract cannot enforce the contract. See Horton v. Horton, 254 Va. 111, 115 (1997). By the time Plaintiff offered to pay the remaining balance of rent in April 2023, Plaintiff had already breached the lease agreement by failing to pay rent since May 2022. As Plaintiff had already materially breached the lease agreement, he cannot then seek to enforce the contract for failure to accept the unpaid rent. Furthermore, the lease agreement prescribed the accepted manners of paying rent, none of which included paying using a court as an intermediary. The conclusion that Defendant did not breach the lease agreement is consistent with the decisions of the Loudoun County General District Court, which awarded Defendant possession of the premises and a judgment against Plaintiff. Therefore, the breach of contract claim must be dismissed.

Plaintiff's retaliation claim brought under § 1981 similarly fails. To make a prima facie claim for retaliation under § 1981, a plaintiff must demonstrate that (1) he engaged in protected activity; (2) he suffered an adverse action by the defendant; and (3) the defendant took the adverse action because of the protected activity. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 190 (4th

11

Cir. 2001). As to the third element, "a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action." Ali v. BC Architects Eng'rs, PLC, 832 F. App'x 167, 172-73 (4th Cir. 2020).

Plaintiff claims his complaint made to the FHEO in December 2022 constitutes his protected activity. Plaintiff argues that Defendant issued the Notice of Nonrenewal of Tenancy and Termination of Lease in January 2023 and refiled the unlawful detainer proceeding in February 2023 in retaliation for that action. However, Plaintiff fails to satisfy the but-for test required for both adverse actions. The decisions to not renew Plaintiff's lease and bring an unlawful detainer action appear to have been made before the protected activity occurred. Initially, Defendant declined to renew Plaintiff's lease when he requested it be renewed in November 2022. Similarly, Defendant issued the Notice to Pay Rent or Quit in July 2022 and brought an unlawful detainer action in October 2022. While that case was nonsuited due to the failure to serve Plaintiff with all required notices, the decision to bring the action against Plaintiff was clearly made before December 2022. Since both decisions were made before December 2022, Plaintiff cannot prove that the FHEO report was the but-for cause of those actions by Defendant. Accordingly, the retaliation claim under § 1981 must be dismissed.

Lastly, Plaintiff's Motion for Partial Summary Judgment raises several arguments and theories of liability that are not included in the Amended Complaint. However, "a plaintiff may not raise new claims after discovery has begun without amending his complaint." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009). These new arguments and theories include Plaintiff having a right of redemption that was violated by the eviction, Defendant creating a hostile housing environment in violation of 42 U.S.C. § 3604(b), and Defendant discriminating against Plaintiff by serving a Five-Day Notice to Pay Rent or Quit rather than a Fourteen-Day Notice. As these arguments and theories were not raised in the Amended Complaint, and Plaintiff has made no attempt to amend the Amended Complaint to include them, these arguments and theories need not be considered.

For the foregoing reasons, Defendant's Motion for Summary Judgment should be GRANTED, and Plaintiff's Motion for Partial Summary Judgment should be DENIED.

An appropriate Order shall issue.

_/s/ Claude M. Hilton_
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
December _1_, 2023

13